REBECCA HAUSER *v.* LEVI SAIN and JACOB SAIN, Adm'rs.

When one person renders services to another, the law implies a promise to pay what the services are reasonably worth. The relation of granddaughter and grandfather existing between the plaintiff and the intestate of the defendants, does not rebut the presumption so as to throw upon the plaintiff the *onus* of proving a special contract.

(*Williams* v. *Barnes,* 3 Dev. 348, cited and approved )

This was a CIVIL ACTION, brought by the plaintiff to recover the value of certain services, alleged to have been rendered the intestate of the defendants; and was tried before

*Schenck. J*, and a jury at Fall Term, 1875, of the Superior Court of LINCOLN county.

By consent, the following issue was submitted to the jury:

Is the plaintiff entitled to recover for services rendered to the deceased. If so how much?

The plaintiff testified: That she was now thirty years of age. She was born in 1845. She was a grand daughter of the defendants intestate.

Joseph A. Sain testified: The plaintiff went to John Hauser's, in M·rch, 1864. He heard Hauser, the intestate of the defendant, say two or three times that he had got the plaintiff to come and stay with him; that he had nothing to give her now, but that she should be well paid for it. He heard the deceased say this in 1864, and in 1868. The plaintiff was not present during these conversations. The plaintiff remained at the house of the deceased from 1864, until the time of his death, in 1874. No one lived there except the plaintiff and her grandfather. For two years and a half before his death, the condition of the deceased was very bad; he was entirely out of his mind; he would have an axe and a pitchfork by his side to ward off apprehended danger. These weapons had to be taken from him. The plaintiff cooked and washed for, and attended the old man; and, for the last two and a half years, "cleaned him as a woman does her baby." He thought the plaintiff's services worth two hundred dollars a year.

On cross-examination, the witness testified: The old man worked some, before he became insane, but was very feeble. The plaintiff raised a cow there, which had a calf, which the plaintiff also raised. She also raised two sheep; she took one bed to Hauser's with her.

One Greenhill, a witness for the defendants, testified: In 1864, he lived with the deceased, who was his grandfather, but left on account of some land, which he desired to cultivate. He was eleven years of age when the plaintiff came

there to live. He heard the plaintiff and the deceased say. that the contract between them was, that the plaintiff was to do the cooking, washing and mending, and that she was to live there and have all the property she could make, over what was necessary for their support. The plaintiff had four or five cattle, and raised a little tobacco and sold it. Witness left Hauser's when he was eighteen years of age.

On cross-examination, the witness stated that he did not know what became of the money for the tobacco, and that the plaitiff generally bought one dress a year.

John Davis, a witness for the defendants, testified : On the 16th of November, 1874, he heard the plaintiff say in the presence of the defendant, Levi Sain, that there was no contract between her and her grandfather as to her services. The defendants agreed that she should take her property or charge for her services, and that she might make her choice. The plaintiff promised to let them know on Saturday. On sale day, at the request of the defendants, he qualified her, as to her property. It consisted of three cattle, a bed or two, a spinning wheel and cards, and some other small articles. The witness said to her : " Now, if you take these things, it pays the debt," to which she replied, " Yes."

The evidence as to the conversation that the witness had with the plaintiff was received on the ground of corroborating Greenhill's testimony, and not as a proof of payment or release, as that defense was not alleged in the answer.

On cross examination, the witness stated that the plaintiff claimed all the property as her own.

One Lingerfelt testified, that in his opinion the plaintiff's services were not worth much, as she kept all she made. They might be worth $100 a year, if she kept nothing. He is a grand son of the intestate.

The plaintiff was recalled, and testified : She did not tell Davis there was no contract; nor did she agree to take the property in place of her services. She did not tell him that

she would give up her claim.   She merely asserted her right to her own property.

Martin Shultz, a witness for the plaintiff, testified: The plaintiff went to Hauser's during the deep snow in March, 1864, and that she did all the cooking, washing and mending. That at this time in 1864, Mr. Hauser's daughter, (who had been living with him,) died.   The plaintiff remained until the old man died.   He thought the services of the plaintiff were worth $50 a year, until the intestate lost his mind ; that they were then worth $100.

The defendant's counsel resisted a verdict on the ground :

1. That the action was barred by the statute of limitations.

2. That there was no contract made between the plaintiff and defendant's intestate, except as stated by Greenhill.

3. That if no contract was made between them, (as Davis alleged-the plaintiff had told him,) then as the plaintiff was the grand daughter of Hauser, and lived with him, the law raised no presumption of a promise to pay.

The court charged the jury:

1. That the statute of limitations barred the plaintiff's claim, except that part which accrued within three years before the action begun.

2. That if they believed Joseph Sain's testimony, and were satisfied from it, that there was a contract that the intestate was to pay the plaintiff, she would be entitled to recover whatever her services were worth within the three years.

3. That if they believed that the contract between them, was as stated by the witness Greenhill, the plaintiff was not entitled to recover.

4.    That if there was no special contract as to the services, that as the plaintiff was some twenty-six or twenty-seven years old when the last services within the statute of limitations were rendered, the law raised a presumption of a promise to pay what the plaintiff's services were worth, and that this

presumption was not rebutted by the relations of the parties or the circumstances of the case.

Under the charge of his Honor, the jury rendered a verdict for the plaintiff for $600, with interest.

The defendant moved for a new trial. Motion overruled. Judgment and appeal by the defendants.

*Battle, Battle & Mordecai*, for the appellants.
*Cobb*, and *Shipp & Bailey*, contra.

RODMAN, J. In regard to a special contract his Honor left the question to the jury upon the testimony of the witnesses.

In regard to an implied contract we see no error in the charge. When one person renders service to another, the law implies a promise to pay what the services are reasonably worth. This is admitted to be the general rule, but it is insisted for the defendant that the relation of grand daughter and grand father, rebutted this implication and imposed on the plaintiff the burden of proving an express contract; otherwise it will be presumed that the services were rendered gratuitously. We can see no reason for this doctrine. The only authority cited in support of it, is *Williams* v. *Barnes*, 3 Dev. 348. That was the case of a son who upon arriving at age continued to live with his mother and attend to her business; it is put on its special circumstances. The mother had given the son two negroes and other property, &c. Apart from the sentiment and feeling excited in the heart of the Chief Justice, by the special circumstances of that case, which he expresses very forcibly, we think the weight of the argument is on the side of Judge Daniel, who dissents. No authority is cited in either opinion, and the decision of the majority of the court admits the general rule to be as we have stated above. There is no error in the charge of his Honor, of which the defendant can complain. We are inclined to think his Honor erred in ruling that the plaintiff's right of action was barred by the

statute of limitations, except as to the last three years. There was no reference to the number of years that the plaintiff was to render her services, nor was she to perform these services from year to year. So it was indefinite as to time, and her right of action did not accrue until her term of service termi- nated by the death of her grand father. See *Northcot* v. *Casper*, but upon this question we are not called on to express a decided opinion. It is alluded to merely to show that the defendant has not been as hardly dealt with by the jury as his counsel seemed on the argument to suppose.

No error.

PER CURIAM.                                Judgment affirmed.