ELIZA A. YOUNG v. LEVI HERMAN, Adm'r.

*Parent and Child—Implied Promise—Presumption.*

1. When a child, after arrival at full age, continues to reside with and serve the parent, the presumption is that such services were gratuitous.

2. But this presumption may be rebutted by proof of facts and circumstances which show that such was not the intention of the parties, and raise a promise by the parent to pay as much as the labor of the child is reasonably worth.

(*Williams* v. *Barnes*, 3 Dev., 348; *Hudson* v. *Lutz*, 5 Jones, 217; cited and approved. *Hauser* v. *Sain*, 74 N. C., 552; cited).

This was a CIVIL ACTION, tried before *Clark, Judge,* at the August Term, 1886, of CATAWBA Superior Court.

The plaintiff is the daughter of the intestate of the defendant, and brought this action to recover compensation for services which she alleges she rendered her father in his life-time while she continued to live with him next after she became twenty-one years of age, as his daughter. She does not allege an express promise on the part of her father to pay her compensation, nor facts tending to prove such an implied promise, other than that she was of age at the time she did the service alleged and that the same was very burdensome and much of it disagreeable.

The following is so much of the case settled on appeal as it is material to set forth here:

"It was in evidence by the plaintiff herself, that she was the daughter of defendant's intestate; that she has never been married; that she is now about forty years of age, and that she lived continuously from her birth with her father to the date of his death, in the latter part of the year 1885; that her mother died about four years ago; that her father's mind has been unsound since some time soon after her

mother's death; that he never made any agreement or contract to pay her anything; that she continued to live as a member of the family, eating at the common table, and that at the time of her mother's death her father owned a small tract of land worth about $......, some cattle, household and kitchen furniture and about $350 in money; that in the latter part of his life her father became feeble in body and mind and required a good deal of attention, and had to be waited upon as a child; that he had to be undressed and washed by her, sometimes as often as three or four times a day, and that she had a great deal of filthy and unpleasant work to do for him, as he was imbecil; that she did all the cooking and caring for and waiting on the old man, whose condition was helpless; that her father was born in 1805; that all the property above mentioned was consumed except the land and about $50 worth of personalty; that she considered her services worth $10 per month. There was also other testimony as to the condition of the intestate's mind and body, and as to the character of plaintiff's services, some tending to show that he was able to labor and did some labor up to a short time before his death, and some tending to show on the contrary his total imbecility; that nothing had occurred in the family to interrupt the relation between the father and daughter as they had existed during her infancy; and that one of his other children assisted her on one occasion when the father was sick, though she alone remained at home."

There was verdict and judgment for the plaintiff, from which the defendant appealed to this Court.

No counsel for the plaintiff.
*Mr. M. L. McCorkle*, for the defendant.

MERRIMON, J., (after stating the facts). Generally, when one person has done labor or rendered valuable services for

another at the latter's request, either express or implied, the law implies a promise on his part to pay the former reasonable compensation therefor. Ordinarily, in the course of the business relations of men, they serve each other for a valuable consideration, and hence, in the absence of an express promise to pay in such case, the person doing the services on the part of him receiving the benefit, there arises a presumption of such a promise.

But such a promise is not implied in all cases where one person does service for another, although the latter takes, and intends to take and have, benefit from it.

This presumption of fact may in some cases be rebutted, and when rebutted no such promise is implied, and no legal obligation to pay arises. Thus if the services were rendered as a pure gratuity or simply in discharge of a moral obligation, no such promise would be implied and no such presumption would arise. And so also, *the relations of the parties* may be such as to rebut such a presumption, as in case of parent and child. The law of nature imposes on the parent the duty to love, cherish, protect, help and encourage his offspring; to afford his children the benefits of family and domestic ties and proper training. To this end, he labors for his children.

He is not prompted by motives of gain from them, nor does he expect or desire such compensation—the reward he wishes and hopes for is priceless and noble—it is, that his children shall fill the just measure of their being, and thus afford him gladness and satisfaction.

And the same law imposes on children filial duty, that of love, gratitude, obedience and reverence; and they are bound by the ties of nature, to aid, by such labor and services as they can do, or otherwise, when need be, in the support of their parents, their home and family. Indeed, the father is entitled to the services of his child until he or she shall arrive at the age of twenty-one years. At that age the child

becomes emancipated, that is, at liberty to leave the father's home, be free from parental control, and to seek his own fortune where and as he will, but such ties and obligations are not then completely broken.

The child never ceases to owe his parents honor and reverence, and also, help, support and protection, when he or she needs these things, whether such wants be occasioned by misfortune or the infirmities of age. Such duties and obligations are founded in nature, and it is not to be presumed that they are abandoned. Hence, if the child, though of the age mentioned, shall continue to live with the father as a member and part of his family, and shall labor for, or render services to the father, without any agreement or understanding as to pecuniary compensation therefor, the law does not raise the presumption of a promise to pay for the same, and the child cannot maintain an action against the father in that respect.

In such case, the presumption is, that the parties do not contemplate or expect the payment of wages on the part of the parent, or payment for board, lodging, apparel and the like on the part of the son or daughter.

This is the orderly course of the natural relation of parent and child; the law favors and takes notice of it, and does not hasten to conclude that they intend to treat each other as debtor and creditor; it presumes the contrary. But such presumption is not conclusive; it may be rebutted and the reverse of it established by proof of an express or implied agreement to the contrary. Such implied agreement may appear from facts and circumstances which show that both parties at the time the labor was done, or the services were rendered, contemplated and intended that pecuniary recompense should be made for the same. The mere fact that the child on attaining his majority, continued to labor for the parent as a member of the family for a long while, or that he did burdensome and disagreeable labor, is not sufficient

evidence of itself to prove an implied promise to pay wages for it, although the extraordinary character of the labor might be pertinent evidence in aid of other competent evidence to raise such implication. Such implied promise may be proven by pertinent declarations of the parties in the presence of each other, and facts and circumstances inconsistent with a purpose on the part of the parent and child that the latter should labor simply as a member of the father's family without wages for his labor, such as that the father had paid the child wages—had repeatedly done so—that the father declared his obligations and purpose to pay wages, had promised to do so; that the child had said in the presence of the father, that he was working for wages and the father did not dissent; that the child had taken a part of the crop, sold the same on his own account with the father's knowledge and consent; that the child had paid for his own clothing, and the like evidence. Of course such evidence would be subject to proper explanation, and the opposing party might produce countervailing evidence.

This seems to us to be a correct and reasonable statement of the rule of law applicable in this and like cases, although it must be conceded that there is some diversity of decision on the subject.

The great weight of authority in this and other States is in favor of the rule as we have stated it above. Its correctness is plainly and approvingly recognized by Chief Justice Ruffin, in *Williams* v. *Barnes*, 3 Dev., 348; and afterwards, by Chief Justice Pearson, in *Hudson* v. *Lutz*, 5 Jones, 217. The case of *Hauser* v. *Sain*, 74 N. C., 552, however, seems to be in conflict with what is said in the cases cited above, although the learned Chief Justice who delivered the opinion of the Court in that case, delivered that in *Hudson* v. *Lutz*, *supra.* See Schouler on Dom. Rel., 269, and the numerous cases there cited.

The Court below simply told the jury " that when one person renders services to another, the law implies a promise to pay for the same what they are reasonably worth, and that the jury in passing upon the first issue, have the right to consider that the plaintiff was the daughter of the house,. the manner in which she was boarded, provided for and treated, and if they believe that such board, treatment and provision was what her services were reasonably worth, they should allow her nothing; but if from the old man's: mental and physical condition, they find that she rendered unusual and unpleasant services, and that these services. were not compensated for by her board, treatment, &c., they could allow whatever such services were, according to the evidence, reasonably worth, during the three years before suit brought, over and above what received."

The Court thus in effect ignored the relation of _parent and child_, and passed by the rule of law applicable, omitting any allusion to the important and pertinent question whether or not there was an agreement, express or implied, between the plaintiff and her father in his life-time, that she should have pecuniary compensation for the labor she did.   In this there is error.   The jury should have been instructed substantially as indicated in this opinion.   Indeed, the Court might, if the whole of the evidence before the jury was sent up as part of the case on appeal, have told them that accepting: the evidence as true, the plaintiff could not recover, and they ought to render a verdict in favor of the defendant.

There must therefore be a new trial.   To that end let this opinion be certified to the Superior Court according to law.. It is so ordered.

Error.                                            New trial..