## *EX PARTE* AYCOCK,

### *IN RE* KIRKPATRICK v. GALLAGHER.

1. IMPLIED CONTRACTS—PARENT AND CHILD.—Where an adult child renders services to his parent, the presumption is that such service was rendered in obedience to the promptings of natural affection, and not with a view to compensation ; but such presumption may be rebutted by positive and direct evidence of an express agreement between the parties providing for compensation, or of circumstances which show clearly that the parent intended to pay something and assumed an obligation to do so. Mere loose declarations by the parent that he wished or intended to pay the child, or that the child ought to be paid, are not sufficient to rebut this presumption.

Before WALLACE, J., York, July, 1890.

The opinion states the case.

*Mr. W. B. Wilson,* for appellant.

*Messrs. Hart & Hart,* contra.

July 28, 1891. The opinion of the court was delivered by

MR. JUSTICE MCIVER. Under proceedings to marshal the assets of the estate of J. J. Patrick, deceased, his creditors were called in to establish their claims. Amongst the claims presented was one in favor of the appellant, who was the daughter of the deceased, for services rendered by her to her father during his life time. To this claim the administrator presented two defences: 1st. A general denial. 2nd. The statute of limitations. The clerk of the court, to whom it was referred to take proof of claims, reported that a part of the claim was barred by the statute of limitations, and established the claim for the remaining part. To this report both parties excepted, the appellant alleging error in sustaining the plea of the statute to any part of the claim, and the administrator contending that there was no evidence of any contract. either express or implied, to pay for the services rendered by appellant to her father, and hence there was error in allowing any part of the claim. Upon this

report and the exceptions thereto the case was heard by his honor, Judge Wallace, who sustained the exception filed by the administrator, and rendered judgment disallowing the entire claim. From this judgment Mrs. Aycock appeals. The testimony is all set out in the "Case," and the only question is whether it is sufficient to establish any contract, either express or implied, on the part of the deceased to pay the appellant anything for her services.

The general rule is that where one who is under no legal or moral obligation to do so, renders service to another at his request, or with his knowledge and acquiescence, the law raises an implied promise on the part of the person receiving the services to pay what they are reasonably worth. But where there is a legal or moral obligation on the part of one to render service to another, no such promise can be implied from the mere rendition and acceptance of such service. In the former case, there being nothing else to which the rendition of the services can be referred, the inference is that they were rendered upon an implied understanding that compensation was to be made: but in the latter case the rendition of the services can be and is referred to a desire to comply with the legal or moral obligation, unless the testimony shows that such was not the consideration upon which the services were rendered; or, to use the language of Gibson, C. J., in *Bush* v. *Bush* (9 Penn. St., 260), unless there is "direct and positive evidence that the services were rendered under a contract for compensation."

In 3 Am. & Eng. Encycl. Law, 861, it is said: "Between parent and child there can be no recovery for board or wages in the absence of an express agreement." In *Dodson* v. *McAdams* (96 N. C., 149), where the rule was held to apply as between grandfather and grandchild, it was held that in such a case there was not only no presumption of a promise to pay, but the presumption was the other way, and the burden is on the claimant to rebut such presumption, which cannot be done by showing casual declarations of the grandfather that his granddaughter ought to be paid for her work. See also *Young* v. *Herman*, 97 N. C., 280. In *Hall* v. *Finch* (29 Wis., 278, reported also in 9 Am. Rep., 559), where the rule was applied as between brother

and sister, it was said: "The relation existing between the parties * * * is itself strong negative proof, and raises a presumption that no payment or compensation was to be made beyond that received by claimant at the time (in the way of board, clothing, &c.), which can only be overcome by clear and unequivocal proof to the contrary. The evidence must be clear, direct, and positive that the relation between the parties was not the ordinary one of parent and child or of brother and sister, but that of debtor and creditor, or of master and servant;" and further, quoting with approval the language of Judge Strong in *Hartman's Appeal*, 3 Grant's Cases: "Loose declarations made to others, or even to the claimant himself, will not answer. That which is only an expression of intention is inadequate for the purpose. It must have been the purpose of the deceased to assume a legal obligation, capable of being enforced against him. The ordinary expressions of gratitude for kindness to old age, weakness, and suffering are not to be tortured into contract obligations."

See also *Miller's Appeal* (100 Penn. St., 568, to be found also in 45 Am. Rep., at page 394), where it is said: "The question always is, whether the parties contemplated payment and dealt with each other as debtor and creditor. A son who takes his decrepit parents into his house and supports them, is presumed to do so from the promptings of natural affection; no contract is implied. But if the father, before they go and afterward, repeatedly declares that he was to pay for their board, such declarations are evidence, and with the circumstances may be so direct and strong as to compel belief that he expressly agreed to pay for it. Loose declarations made to the son or others will not answer. That which may be only the expression of an intention to compensate is not evidence of an agreement to compensate. If he intended to pay, and often said so to others, he was not bound. It must appear that he purposed to assume a legal obligation capable of being enforced against him."

It seems to us that the true rule upon the subject is that where a child renders service to his parents, the presumption is that such service was rendered in obedience to the promptings of natural affection, and not with a view to compensation; but that such presumption may be rebutted by positive and direct evi-

17—34

dence that such is not the fact; and that mere loose declarations on the part of the parent that the child ought to be paid for his services, or that he intended or wished him to be paid, will not be sufficient to rebut the presumption. It must appear, either that there was an express agreement between the parties providing for specific or reasonable compensation, or that the circumstances should show clearly that the parent had not only intended to pay something, but had assumed a legal obligation to do so.

Applying this rule to the case under consideration, it is very clear that there is no error in the judgment of the Circuit Court. It is not pretended that there was any evidence whatever of any express agreement between the parties, and the testimony adduced is wholly insufficient to rebut the presumption that the services rendered by appellant to her aged father were gratuitous. While the testimony does show that the appellant rendered faithful service to her father, for which she is entitled to commendation, we are unable to discover any evidence which even tends to show that such services were rendered under a contract for compensation, either express or implied. One witness says that he heard the father say, "that Mrs. Aycock had too much to do, and that she ought to be paid, but that he had no money." Another witness testified that she had heard the father say, "that Em [meaning appellant] had a hard time and she ought to have pay for it." And another says, "that she has heard her grandfather say that Mrs. Aycock ought to have extra pay for her services to him." This is all that is relied upon to rebut the presumption arising from the relationship of the parties that the services were intended at the time as a gratuity, prompted by feelings of natural affection, and, under the authorities cited, such testimony is clearly insufficient to create any legal obligation.

Under this view of the case it was not necessary either for the Circuit Court or this court to consider the question as to the statute of limitations.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.