| 96 | 165 |
|100 | 664|

## Wytheville.

### JACKSON'S ADM'R V. JACKSON.

#### JUNE 30, 1898.

1. PERSONAL SERVICES—*Compensation for as between Near Relatives—Evidence Required—Presumption.*—Whenever compensation is claimed for services rendered near relatives, as a father, brother, or grandfather, and the like, the law will not imply a promise of payment, and no recovery can be had unless an express contract or its equivalent is shown. A moral obligation to pay is not sufficient, but an express promise must be proved, or facts from which such promise can be reasonably inferred must be established by evidence so clear, direct, and explicit, as to leave no doubt as to the undertaking and intention of the parties. This is especially so when the party sought to be charged is dead. It must be shown that the deceased intended to and did assume a legal obligation to the plaintiff for such services of such a character that it could be legally enforced against him. Generally, the services of a child, grandchild, or other near relative, are presumed to have been rendered in obedience to the promptings of affection, and not with a view to compensation. Such presumption, however, may be rebutted by positive and direct evidence to the contrary.
2. PARENT AND CHILD—*Emancipation of Minor—Compensation for Services.*—A father may emancipate his minor child, and permit him to contract for and receive his wages, and in case of such contract the father is not allowed to recover for the child's wages.

Error to a judgment of the Circuit Court of Wythe county rendered September 25, 1897, in an action of trespass on the case in *assumpsit* wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Fulton & Fulton* and *Blair & Blair*, for the plaintiff in error.

*Walker & Caldwell* and *W. S. Poage,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of Wythe county in an action of *assumpsit* brought by John W. Jackson against Richard Jackson's admr. *c. t. a.* for wages, for services alleged to have been rendered Richard Jackson by the plaintiff from January, 1890, to January, 1897, at the price of $15 per month.

John W. Jackson is the son of David Jackson, a son of Richard Jackson, and it appears that about January, 1890, when the plaintiff was 14 years of age, the wife of David Jackson died, leaving, surviving her, her husband and nine children, some of them of tender years, and owing to his poverty and surroundings David Jackson was compelled to put out some of his children among relatives and friends; the plaintiff being sent to the home of his grandfather, Richard Jackson, where he was received and lived as a member of his grandfather's family. It is not pretended that there was any contract between the grandfather and the plaintiff at the time that the latter was taken by the former to be cared for and raised by him, and there is absolutely no proof of any promise made by the grandfather to the plaintiff, prior to the spring of 1896, that the plaintiff would receive compensation for his labor, and there is no proof showing any facts or circumstances from which it could be reasonably inferred that any such promise was made by the grandfather. While the plaintiff lived with his grandfather, the latter had never less than two of his own sons living with him, and doing work on and about the farm and around the house as was done by the plaintiff. Richard Jackson died in February, 1897, and plaintiff obtained his majority in April following, and this suit was instituted shortly thereafter. The evidence shows that Richard Jackson

not only supported the plaintiff as if he had been his own child, but at times gave him pocket money, and the only evidence adduced to show facts and circumstances from which to infer a contract between the parties, prior to the spring of 1896, is to the effect that the grandfather had been heard to say " the plaintiff was a good boy, and it was hard to do without him"; that he worked there and was a good hand; that the grandfather paid one of his sons about 38 years old for labor on his farm 50 cents per day and his board; and that plaintiff's work was worth as much as his; that David Jackson, father of the plaintiff, heard the grandfather say several times that the plaintiff should have wages, and on one occasion, while he was sick and a few months before he died, he heard him say that " the plaintiff should be well paid for his work," and about two months before his death this witness (David Jackson) heard him say " the boy has to be paid for three or four years' work." This witness, however, says that he could not say that the grandfather ever made any other contract with witness or with the plaintiff, than that just stated; that his grandfather furnished plaintiff his board and clothes, and he lived with his grandfather as a member of his family; that witness was not paid any wages by other persons that took his children; and that his wife having died, and he, having no way to raise them, was compelled to put them out, and that he never claimed his son's (the plaintiff's) wages and did not do so now, and didn't claim anything he might recover in this case. After making the foregoing statement, David Jackson says that " a short time after John was sent to his grandfather's, he (witness) went over there and found John there; that he, witness, and Richard had a conversation on this occasion, and Richard said ' if John staid with him until he was 21 years old and satisfied him, he would pay him for his work.'" But witness says that he kept this secret, telling no one about it. One witness testified that he sometimes worked for Richard Jackson, and last spring a year ago (which was the spring of 1896), while work-

ing there, some difference arose between plaintiff and one of the family, and witness heard Richard Jackson say: "John, never mind that. Go on; pay no attention to it, and you shall have pay for your labor." The witness further testified that nobody else was present but Richard, plaintiff, and witness, and that after the above conversation plaintiff continued to work for his grandfather as he had been doing; that he had known Richard Jackson when he sent John on an errand, or John did extra work, to give him some money as pocket change, and that Richard Jackson said it was for that purpose.

Another witness for the plaintiff testified that "last spring a year ago (which was the spring of 1896) she was at Richard Jackson's doing some work; that an altercation arose between plaintiff and some one on the place; that plaintiff was fixing to leave, and Richard Jackson sent her for plaintiff, and in her presence said to him that he, Richard, could not do without him, and would pay him for his labor if he would stay on; that plaintiff did stay and continued to work, and after the will was made she heard Richard say that he owed the two Johns and Fishy Archer for their work."

Other witnesses testify to the effect that they had heard Richard Jackson say that he intended to pay John for his labor, and pay him well, or that, if the plaintiff staid with him until he was 21 years of age, he must be paid, but he would never pay a minor, because he was afraid the father might claim wages—one saying that he had heard Richard Jackson say a little over a year prior to his death that he had to give work to the two John Jacksons and keep money to pay them.

All of the witnesses testify that the plaintiff worked well, and that the grandfather furnished him with board, clothing, lodging, and everything he needed. J. K. Hollandsworth, admr. *c. t. a.* of Richard Jackson, testified that on the morning Richard Jackson's will was written he sent for witness to come over to his house; that while there, before dinner, witness asked about John, the plaintiff, and Richard said the plaintiff

" shall have some pay "; that after dinner witness again called his attention to this—that is, to John's pay—and Richard said, " I will have to fix that another way "; that Captain Crockett wrote the will that day; that Richard owned a farm of 375 acres of land, on which he lived; that it was worth about $20 per acre; that the personal estate amounted to about $4,700; * * * * and that he had on hand in bank and in good notes about $2,000; that Richard Jackson only owed two debts that had thus far been presented. to witness as administrator; one for $2.75, and the other $1.94, but there were credits on these that reduced the amount down to $1.11.

By his will Richard Jackson devised his land to his three living sons in equal shares, David Jackson, the father of the plaintiff, being one of them, charging each with the payment of $200 in five equal annual payments to the children of a deceased son of testator, and gave his personal estate to his living daughters, and the children of his deceased daughters.

Witnesses for the defendant testify that they had heard the plaintiff say that there was no contract between him and his grandfather that he was to have wages; that on one occasion plaintiff left because his grandfather would not pay him wages, and remained away several days, but went back because (as plaintiff said) it was best to go back anyhow; that Richard Jackson had been heard to say in plaintiff's presence that he was not paying him any wages, and would not, as his father had brought him there for his victuals and clothes, and he (the grandfather) had taken him for pity's sake, and that if he (plaintiff) was not satisfied he could go away.

At the trial, the plaintiff asked for an instruction, which was given over the objection of the defendant, and the defendant asked for four instructions, all of which were refused, and exceptions were taken by the defendant to the rulings of the court in giving plaintiff's instruction, and in refusing the instructions asked for by the defendant.

Plaintiff's instruction is as follows: " The court instructs the

jury that where near relatives are residing in the same house together, or persons standing *in loco parentis*, before there can be a recovery for such services, the express promise of the party served must be shown, or such facts and circumstances as will authorize the jury to find that the services were rendered in expectation by one of receiving, and of the other of making, compensation therefor. Therefore, if the jury believe from the evidence that the service in this case was rendered in the expectation on the part of John W. Jackson of receiving, and of Richard Jackson of making, compensation, or paying for the services rendered, they will find for the plaintiff, and assess his damages at such sum as, under all the circumstances, is fair and right."

There is nothing in this instruction to indicate to the jury either the degree or the quality of proof necessary to establish such a promise or undertaking on the part of Richard Jackson to pay plaintiff for his services as is required by law to warrant a recovery in a case like this, and the instruction was calculated to mislead the jury into a finding that there was such a contract between those parties as justified a recovery by the plaintiff, merely from such facts and circumstances as would raise in law an implied promise on the part of Richard Jackson to pay plaintiff the value of his services, as in cases where the parties do not stand *in loco parentis.*

In all cases where compensation is claimed for services rendered near relatives, as a father, brother, grandfather, etc., the law will not imply a promise, and no recovery can be had unless an express contract or what is equivalent thereto is shown. It is not enough to establish a moral obligation to pay for them, but an actual promise must be proved, or facts from which such promise can be reasonably inferred, established by evidence so clear, direct, and explicit, as to leave no doubt as to the understanding and intention of the parties. Loose declarations to neighbors or friends, or even to the claimant himself, are not enough, particularly when such rela-

tive is deceased. *It must be shown that the deceased intended to and did assume a legal obligation to the complainant for such services of such a character that it could be legally enforced against him.* Expressions of commendation or gratitude, or of an intention to remember him in his will, cannot, unless brought home to the knowledge of the claimant, and shown to have been the consideration upon which the services were rendered, to the knowledge of the deceased, be made the basis of a contract obligation. An action cannot be predicated upon *intentions* merely.

These are substantially the rules as stated by law writers, and as stated in 17 Amer. & Eng. Enc. of Law, p. 337, where it is added that the proof must leave no doubt, and that the rules are to be more rigidly enforced where the action is by one for services rendered before he became an adult. See also cases cited in notes.

Mere general expressions by a father to the effect that his son waited on him well, and that he wanted him to be well compensated for it, are not sufficient proof of any contract either express or implied. *O'Kelly* v. *Faulkner* (Ga.), 17 S. E. 847; *In re Kirkpatrick's Estate* (S. C.), 13 S. E. 450.

In the last named case it was held that to entitle the daughter to recover from the father for services, declarations of the father of an intention to pay, and to pay well, for her services were insufficient to create a legal obligation, as in such cases the presumption is that the services were gratuitous, and there must be, in order to recover, proof of an express agreement to pay. It must appear either that there was an express agreement between the parties providing for specific or reasonable compensation, or that the circumstances show clearly that the parent had not only intended to pay something, but had assumed a legal obligation to do so.

In *Hartman's Appeal*, 3 Grant. Cas. 276, it was said by Strong, J.: "Loose declarations, made to others, or even to the claimant himself, will not answer. That which is only an

expression of intention is inadequate for the purpose. It must have been the purpose of the deceased to assume a legal obligation capable of being enforced against him. The ordinary expressions of gratitude for kindness to old age, weakness, or suffering are not to be tortured into contract obligations."

In *Miller's Appeal*, 100 Penn. St. 568, it was said: "The question always is whether the parties contemplated payment, and dealt with each other as debtor and creditor."

In *Bash* v. *Bash*, 9 Penn. St. 260, where an action was brought by a son against the estate of his father for services under an alleged promise of the father to leave the son his farm, Gibson, C. J., said, in reference to this class of actions, and the species or *quality* of proof essential to sustain them : "A contract for testamentary compensation for work done for a father by his son after his majority can be proved only by direct and positive evidence of it. Yet [referring to the charge of the court below] for direct and positive the judge in his charge substituted *clear and satisfactory,* and thus put such a contract, as to the proof of it, on the footing of a contract between strangers, unaffected by any personal relations. The course of this court has been to hold a tight rein over it, by making the *quality* if not *the sense of the proof* a subject of inspection and governance by the court, and by holding the jury strictly to the rule prescribed, instead of suffering them to be led away by considerations of hardship or paternal injustice. *Every man must be allowed to make his own contract as well as his own will,* and to prevent jurors from making it for him, according to their peculiar notions of fitness and propriety, we have held that the evidence of a contract to compensate the services of a child *must be positive and direct.* But, evidence *clear and satisfactory,* in the estimation of a jury, may be neither. It may be no more than presumptive or inferential; and if that were sufficient it would be easy to see how every case of this sort would go. To an unpracticed eye *loose and inconsiderate expressions,* such as make up the mass of evidence in this case, and the pre-

sumptions or probabilities resting on circumstances, may seem perfectly clear and satisfactory, but they do not constitute the proof by which, in the judgment of this court, such contracts are to be established."

The true rule upon the subject is, said the court, *In re Kirk-patrick's Estate, supra,* that "where a child renders service to his parent, the presumption is that the service was rendered in obedience to the promptings of natural affection and not with a view to compensation; but that such presumption may be rebutted by positive and direct evidence that such is not the fact, and that mere loose declarations on the part of the parent that the child ought to be paid for its services, or that he intended or wished him to be paid, will not be sufficient to rebut the presumption."

The case at bar is of that class of cases of which Pearson, C. J., in *Hudson* v. *Lutz,* 50 N. C. 217, said: "The same principle applies to grandfather and grandchild when one assumes to act *in loco parentis.* The relation of the parties rebuts the presumption of a special contract, and puts the idea that he was to be paid for furnishing a home, or they were to have 'a price' for work and labor done, out of the question." And by Ruffin, J., in *Hussey* v. *Roundtree,* 44 N. C. 111, "such claims ought to be frowned on by the courts and juries. To sustain them tends to change the character of our people, cool domestic regard, and in the place of confidence, sow jealousies in families."

In such cases, said the court in *Poorman* v. *Kilgore,* 26 Penn. St. 365 (67 Amer. Decs. 425), "the very nature of the relations, therefore, requires the contracts between parents and children to be proved by a kind of evidence that is very different from that which may be sufficient between strangers. It must be direct, positive, express, and unambiguous. The terms must be clearly defined, and all the acts necessary for its validity must have a special reference to it, and nothing else."

In the case of *Harshberger* v. *Alger & Wife,* 31 Gratt. 52, to which we have been cited, and in which Mrs. Alger sought to

set up a claim against her mother for services, this court held that no express contract for the services had been proved, and no contract could be justly implied, as the evidence rebutted the presumption of any contract. The opinion by Burks, J., did not, nor was it necessary to, discuss the degree or quality of evidence that would be deemed sufficient to prove a contract upon which Mrs. Alger could have sustained her claim. •

So in the case of *Stoneburner & Richards* v. *Motley*, 95 Va. 784, recently decided by this court, it was held that the fact that the son had secured by deed of trust on his property a debt to his father for board of himself and horse, and for furnishing the horse for twelve years, there being no antecedent contract by which the son agreed to pay the father, did not constitute a valid consideration for the deed, and that therefore the deed in this respect was void as to creditors; and it was said in the opinion by Keith, P., that as between father and son, grandfather and grandson, or others standing *in loco parentis*, no contract was implied in law upon which compensation for services could be recovered, but it was unnecessary in that case, as in the case of *Harshberger* v. *Alger*, *supra*, to enter into any discussion of the degree or quality of evidence required to overcome the presumption that there was no such contract.

An examination of the best reasoned decisions to which we have had access brings us to the conclusion that, in cases like the one under consideration, in order to recover, the plaintiff must prove an *express contract* whereby the person sought to be charged assumed a legal obligation to the claimant to pay him for his services, and of such a character that it could be legally enforced against him, and was so understood when made, or by proof direct, positive, express, and unambiguous in establishing facts and circumstances, from which it may be reasonably inferred that there was an express contract by which the one promised or agreed to pay, and the other was to receive compensation.

The first and second instructions asked for by the defendant are to the effect that if the jury believe from the evidence that

Richard Jackson did make a contract with the plaintiff, and the plaintiff was then under 21 years of age, the father alone could recover the wages, and not the plaintiff. These instructions were properly refused. In addition to the fact that the father may emancipate his child and allow him to contract for and receive his wages, plaintiff's father in this case had testified that he never claimed, and did not then claim, plaintiff's wages, or anything that he might recover in this suit, and the plaintiff was then over 21 years of age.

Defendant's instruction No. 3, refused, is as follows: "The court instructs the jury that because of the family relations of plaintiff and Richard Jackson, a contract by Richard Jackson to pay for the services of plaintiff must be proven by the plaintiff; that the proof of the same must be direct, positive, express, and unambiguous."

It follows from what has already been said in this opinion that there was error in refusing this instruction, especially in view of the instruction given for the plaintiff.

The remaining instruction asked for by the defendant and refused, was to the effect that if there was no express contract by which Richard Jackson agreed to pay wages for plaintiff's services, and if the contract was only implied from the facts and circumstances, then this suit could not be maintained in the name of the plaintiff.

This instruction was properly refused, as it was calculated to mislead or confuse the jury.

There was a verdict and judgment in the court below for $500, and a motion of the defendant to set aside the verdict and grant a new trial because excessive and contrary to the law and the evidence was overruled, and the defendant excepted.

It is needless to review the evidence again in this connection. We are of opinion that it wholly failed to authorize the jury to find that the grandfather had made any sort of contract to pay the plaintiff for his services prior to the spring of 1896. The testimony of the two witnesses who say that his grand-

father promised the plaintiff, in the spring of 1896, that if he would stay he should be paid for his labor, and that plaintiff did stay and continued to work as before, negatives every presumption even that there was an antecedent contract of any character that the plaintiff was to be compensated for his services. How could he have been induced, by the promise to pay him wages then made, to remain and continue his work, if that was already the contract with his grandfather?

The verdict was not only excessive to the extent that it included compensation to the plaintiff for services rendered Richard Jackson prior to the spring of 1896, but was contrary to the law and the evidence in the case, and for this reason should have been set aside, and a new trial awarded.

The judgment of the court below must be set aside and annulled, and the case remanded for a new trial, to be had in accordance with the views expressed in this opinion.

*Reversed.*