### DASH v. INABINET.

1. PARENT AND CHILD—NURSE BILL.—Rule stated as to agreement on
   the part of parent to pay child for personal services in nursing, &c.,
   to parent at his home. *Ex parte Aycock*, 34 S. C., 257, *distinguished
   from this*.

2. IBID.—IBID.—NONSUIT.—There being some testimony in this case
   tending to show that the father had agreed to pay his daughter for
   nursing him at his home, nonsuit was improper.

Before WATTS, J., Orangeburg, September, 1897. Re-
versed.

Action by Laura V. Dash *v.* John H. Inabinet, adminis-
trator of John Inabinet, for nurse bill. From judgment of
nonsuit, plaintiff appeals.

*Messrs. Glaze & Herburt*, for appellant, cite: *Nonsuit
improper where there is any testimony tending to establish
material allegations of complaint:* 16 S. C., 397; 22 S. C.,
4; 38 S. C., 485; 41 S. C., 485; 44 S. C., 317; 43 S. C., 537;

29 S. C., 318; 35 S. C., 576. *Facts proved tended to show implied contract and agreement:* 45 Am. R., 396; 16 Ill., 296; 13 Wend., 460; 65 Barb., 645; 2 Hill, 576. *Existence of implied contract is for jury to say:* 41 Mo., 441; 3 Johns., 199; 13 Johns., 379. *Character of services precludes idea of gratuity:* 23 Ind., 50; Cheves, 171.

*Messrs. Raysor & Summers,* contra, cite: *Exceptions 3 and 4 too general:* 52 S. C., 75; 44 S. C., 546; 22 S. C., 271; 24 S. C., 280; 24 S. C., 597; 46 S. C., 95, 541; 43 S. C., 92. *Nonsuit granted when there is total lack of evidence:* 19 S. C., 510; 21 S. C., 93; 44 S. C., 317. *Between parent and child, contract must be proved:* 29 Pa. St., 65; 7 At. R., 61; 58 Vt., 375; 65 Ia., 57; 34 S. C., 257.

Oct. 20, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This was an action brought by the plaintiff to recover the value of her services rendered the intestate during his lifetime. The testimony tended to show that the plaintiff was the daughter of the intestate, and upon her marriage, some twenty-odd years ago, she, with her husband, at the urgent request of her father, continued to live with him up to the time of his death, which occurred on the 3d of December, 1894; that plaintiff cooked, ironed, scoured, sewed, and did all the house work and washing, and also cooked for the hands which her father sometimes hired to work in his farm; that her husband worked in the farm, furnishing one horse, and her father two or three horses; that her husband, at first, worked for wages, and afterwards for one-fifth of the crop; that she, her husband, and her four children, and her father ate at a common table, the provisions being furnished partly by her father and partly by her and her husband; that for five or six years before his death, her father was afflicted, requiring to be waited on, and this was done by plaintiff and her children. When the plaintiff was asked as to whether there was any understanding or agreement with her father as to

the compensation she was to receive for her services, her testimony as to this point was objected to as incompetent, under sec. 400 of the Code, and the objection was sustained. This was substantially the testimony of the plaintiff herself. The witness, Whittaker, testified that, in a conversation with intestate during his last illness, he told witness, amongst other things, speaking of the plaintiff and her husband, George, "if it had not been for them staying with him and taking care of him, he did not know what would have become of him, * * * said he had promised to pay Laura for waiting on him, and had also promised to leave papers in his desk so she would be sure to get it; but he didn't say how much. He also said that they expected that the papers were fixed up already, but they were not. He said when he got better he would attend to it. * * * He said he couldn't do without George and Laura, and that George had threatened to leave him a time or two; but that he couldn't do without them." The witness, George Dash, the husband of plaintiff, when asked what the intestate told him in regard to paying for the services of his wife, testified as follows: "He told me time and again, when he was making arrangements for the year, he would tell me what he would give me, and I would tell him that the way Laura was working for him did not suit me; and he said, you need not be afraid, she will be paid. He said he wanted us to stay with him. He said he did not know what he would do without us." And when this witness was asked whether intestate had made any offer to pay Mrs. Dash, he said that "at one time he bought a piece of land that he said he was going to give her." He further testified that the intestate, being unable to refund the money which he had borrowed to pay for this land, being pushed for it by the lender, had to sell the land, and "he told me when he was about to sell it, that he had to sell it, but he would fix things so she would be paid." There was other testimony on the part of the plaintiff, but as it seems to be merely cumulative, we have not deemed it necessary to set it out.

At the close of the testimony on the part of the plaintiff, a motion for nonsuit was made, which was granted by his Honor, Judge Watts, upon the grounds that there was no testimony to show any contract between the parties, and judgment was entered accordingly.

From this judgment plaintiff appeals, upon the several grounds set out in the record, which need not be repeated in detail here, as the only question presented for our consideration is, whether there was any testimony tending to show that there was a contract between the parties for the payment to plaintiff of the value of her services. In the case of *Ex parte Aycock*, 34 S. C., at page 257, the rule, in a case like this, is thus stated: "The true rule upon the subject is, that where a child renders service to his parents, the presumption is that such service was rendered in obedience to the promptings of natural affection, and not with a view to compensation; but that such presumption may be rebutted by positive and direct evidence that such is not the fact; and that mere loose declarations on the part of the parent that the child ought to be paid for his services, or that he intended or wished him to be paid, will not be sufficient to rebut the presumption. It must appear either that there was an express agreement between the parties providing for specific or reasonable compensation, or that the circumstances should show clearly that the parent had not only intended to pay something, but had assumed a legal obligation to do so." It is not necessary, however, to show that the parties had agreed upon the *amount* of the compensation; for if it is shown that the parent had agreed to pay what would be a reasonable compensation for the services rendered, that would be sufficient, even though no specific amount should have been stated. Hence, in the quotation above, the language used is, that the agreement must provide for "specific *or reasonable* compensation;" and this view is supported by the cases cited in a note on page 339 of 17 Am. & Eng. Enc. of Law. It will be observed that this case differs from the case of

25—53

Aycock, above cited, in this respect.    There the claim was presented under a proceeding in equity, where the Court was required to pass upon the *sufficiency* of the evidence to establish the claim, and accordingly it was said, at page 256: "The testimony is all set out in the 'Case,' and the only question is, whether it is *sufficient* (italics ours) to establish any contract, either express or implied, on the part of the deceased to pay the appellant anything for her services."    But here the question arises in a case at law, where this Court has no jurisdiction to pass upon the sufficiency of the evidence, but our only inquiry is, whether there was *any* testimony tending to establish the plaintiff's claim. In this case, it is very apparent that there was no direct and positive testimony of any agreement between plaintiff and intestate as to compensating her for her services; for when the plaintiff was asked whether there was any such understanding with her father, the question was objected to, and very properly ruled incompetent, under sec. 400 of the Code.    The plaintiff was, therefore, forced to rely on such other circumstances as she was able to prove, from which the jury *might* infer that there was an agreement for compensation.    It will be observed that we use the word "might," and not the word "should," for it is not for us to say what inferences the jury *should* draw from the testimony, but only to determine whether there was *any* testimony from which the jury might infer that there was a contract.

Without discussing the testimony above stated, or indicating any views which might be taken of it, or suggesting any inferences that might be drawn from it, as that might prove prejudicial to one or the other of the parties, it is sufficient for us to say, that there was *some* testimony from which the jury *might* infer that there was a contract; but whether the testimony was *sufficient* to warrant such an inference, we have neither the power nor the disposition to say; and we must not be regarded as expressing, or even intimating, any opinion whatever as to

the sufficiency of the evidence, as that is a matter exclusively for the jury. It seems to us, therefore, that there was error in granting the motion for a nonsuit.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.