## WESSINGER v. ROBERTS, ADMX.

1. PARENT AND CHILD—CONTRACT.—THE PRESUMPTION that services rendered to a mother by a daughter are gratuitous, is not of itself destroyed by the fact that they were not members of the same household, yet this fact weakens the presumption, and it may be regarded as giving support to other facts tending to establish an implied contract.

2. IBID.—IBID.—IBID.—NONSUIT.—Nature of services rendered mother by daughter is important factor in determining whether they are to be regarded as gratuitous, but under the facts here proved no inference arises that compensation was contemplated.

3. IBID.—IBID.—EVIDENCE—CONTRACT.—Questions excluded by trial Judge as to conversations between deceased mother and witness as to compensation to daughter for services to mother should have been permitted, because from the answers the jury might have inferred and implied contract to compensate daughter for services.

Before DANTZLER, J., Lexington, September, 1902. Reversed.

Action by Elizabeth . P. Wessinger against Mary Jane Roberts, as administratrix of estate of Harriet Seay, on the following complaint:

"1. That Harriet Seay died on the 24th day of February, 1901, leaving a paper in form a will, which was adjudged by the probate court to be null and void as a will, and thereupon the said court granted letters of administration upon the estate of the said Harriet Seay to Mary Jane Roberts, who qualified as such administratrix, and is now such administratrix.

"2. That this plaintiff is a daughter of the said Harriet Seay, who lived not far from this plaintiff with her bachelor son, W. B. Seay, who died on or about the 30th day of August, 1898; and the said Harriet Seay for many years before her death suffered of a severe and malignant sore on her back, called by the doctors a cancer.

"3. That after the death of her said son, she was left alone

at her home, with the exception of probably some servants on the place.

"4. That from the 1st of September, 1898, until about the 7th of January, 1899, this plaintiff went constantly backward and forward between her home and that of her mother, and gave her such care and attention as she could, the said cancer all the time needing dressing.

"5. That on the 7th of January, 1899, after her mother had requested her to move her to plaintiff's home, and after her mother had made such disposition as she liked of her household goods, the plaintiff moved her mother to her home and kept her there until her death. That during all this time the cancer on her back continued to grow and become more malignant and offensive, suppurating all the time profusely, requiring dressing every day once and often twice per day, which consisted in removing the cloths on the sore, and washing it out well and putting new cloths on the sore. This work was exceedingly offensive, so much so that plaintiff could hardly bear to go through with it, and could not obtain at any price any one else in that section of country to do it for her. Under the advice of the doctors, the floor on which the dressing was done was washed up after each dressing, the water from this and from cleansing the sore and the cloths used in saturating the pus, had to be carried out and buried or burned, as she was advised by the physicians that it was dangerous to have them undestroyed, on account of the contagious character of the disease. That vast quantities of carbolic acid had to be constantly used about the house, and yet the offensive odor was distinctly noticeable to visitors, and this odor permeated the house at all times. All of this service this plaintiff personally rendered to her mother until up to her death, at which time she found herself nearly broken down physically.

"6. That the services so rendered her said mother are richly worth $2,000.

"Wherefore, the plaintiff demands judgment against the

16—67

defendant for the sum of $2,000 and for the costs of this action."

From order of nonsuit, plaintiff appeals.

*Messrs. Efird & Dreher* and *P. H. Nelson*, for appellant. The former cite: *What is implied contract and how proved?* 3 Strob. Eq., 324; 15 Ency., 2 ed., 1078; 53 S. C., 282. *Where the parties live in separate families, the usual presumption does not arise:* 2 S. E. R., 453; 6 S. E. R., 685; 34 S. C., 255; 37 S. C., 161; 38 S. C., 158; 53 S. C., 382; 30 S. E., 750.

*Messrs. Andrew Crawford* and *G. T. Graham*, contra, cite: *No express contract being alleged, evidence tending to support it properly excluded:* 53 S. C., 382; 3 Strob., 321. *Excluded evidence would not show implied contract:* 34 S. C., 258; 53 S. C., 385. *As to presumption of gratuity:* 37 S. C., 169; 38 S. C., 167; 35 S. C., 551; 2 Bay, 101.

July 28, 1903. The opinion of the Court was delivered by

MR. JUSTICE WOODS. Mrs. Harriet Seay was an aged lady, afflicted with sores of a cancerous nature, who lived at her own home with her son. In August, 1898, the son died, leaving her alone except for the servants on the place. After this time her daughter, the plaintiff, Mrs. Wessinger, who lived about three-fourths of a mile away, visited her very frequently, dressed her sores, and gave her such attention as it was possible for her to do with proper regard for her family duties. On January 7th, 1899, at the request of Mrs. Seay, Mrs. Wessinger took her to her own home and there nursed her devotedly until her death on the 24th of February, 1901. The sores were very malignant and offensive, and the services rendered involved great labor of a very unpleasant and repulsive kind, resulting in much physical discomfort and impairment of the health of the plaintiff. The plaintiff states the value of these services at $2,000.

These are in brief the allegations of the complaint in this action, brought by Mrs. Wessinger against the administratrix of the estate of Mrs. Seay. The complaint will be set out in full in the report of this case. No express promise is alleged. The plaintiff offered testimony tending to establish all the allegations of her complaint. The attempt was made on her behalf to elicit from Rev. C. P. Boozer, a witness, statements made to him by Mrs. Seay as to compensation for Mrs. Wessinger and her reason for asking to be moved to her daughter's house. This evidence was excluded, on the ground that the action was on an implied contract, that no express contract was alleged and none could be proved. At close of plaintiff's case, a motion was made for nonsuit, which was granted, the Circuit Judge holding there was a total want of proof to support the claim. The plaintiff appeals, alleging error in excluding the evidence above referred to and in granting the nonsuit.

We express no opinion as to whether the complaint sufficiently sets up an implied contract to pay for the services; for the reason that no such question was made in the Circuit Court or in this Court. On the contrary, the complaint was treated throughout the trial by both parties as alleging an implied contract, and for that reason it will have to be so regarded here. We have no hesitation, however, in holding the nonsuit was inevitable under the evidence before the Court. Services of the nature described by the witnesses, rendered by a daughter to a suffering mother, though very onerous, exhausting and unpleasant, are presumed to be given and received as expressions of self-sacrificing devotion. It is true, there was evidence to the effect that much of the service was rendered while the mother and daughter were not members of the same household; and there is high authority for the proposition that the presumption of gratuitous service prompted by affection alone does not exist in such case. 21 Am. & Eng. Ency. of Law, 1063. We do not, however, assent to this view. The presumption that no charge is intended for

nursing and care bestowed by those closely connected in family life is based on the conception that such services ought to be, and usually are, freely given under the promptings of affection, which is not dependent on the circumstance of living in the same household. We think the better view is, while this fact tends to weaken the presumption, it will not of itself destroy it, and warrant the legal inference of implied contract to pay for such services, or even require the case to be sent to the jury; but where there is evidence of other circumstances tending to establish an implied contract, the fact that the mother and daughter were living in different homes might well be regarded as giving color and support to such evidence.

We are asked to hold that the presumption of gratuitous service does not extend to menial labor not usually performed by one member of a family for another. It is true, the nature of the service is an important factor in determining whether it is to be regarded gratuitous, but we see nothing in the testimony relating to the character of the plaintiff's services to warrant the inference that compensation was contemplated.

The presiding Judge excluded answers to the following questions which the plaintiff proposed to ask Rev. C. P. Boozer: "Did Mrs. Seay ever have a conversation with you in reference to herself and Mrs. Wessinger, the compensation to Mrs. Wessinger for it?" "Did you hear Mrs. Seay say anything about having requested her daughter to move her to her house?" "Did Mrs. Seay ever tell you why she had requested Mrs. Wessinger to move her to her house?" "What was the conversation?" (referring to a conversation which the witness said he had with the deceased in reference to her request to Mrs. Wessinger to move her to her home). Regarding the complaint for the purposes of this discussion as properly setting up an implied contract on the part of Mrs. Seay to pay for plaintiff's services, the important inquiry is, would any statement of Mrs. Seay which this witness could testify to in response to

the above questions be competent as tending to establish such contract? An implied contract can only be proved by showing the circumstances, and what the parties said and did in respect to their relations to each other. As was held in *Ex parte Aycock,* 34 S. C., 257, 13 S. E., 450, "the circumstances must show clearly that the parent not only intended to pay something, but had assumed a legal obligation to do so." This intention and legal obligation need not be proved by an express promise, but may be gathered from all that the parent said and did relating to the services. From such testimony the contract may be implied. The distinction is clearly drawn in *Ex parte Aycock, supra,* and more strongly still in *Dash* v. *Inabinet,* 53 S. C., 384, 31 S. E., 297. We express no opinion as to the weight to be given to any declarations of the mother; but suppose Mr. Boozer had been allowed to testify the mother had often declared she did not intend the usual rule to apply, and declared to him that her estate must be responsible for the value of her daughter's services. This would certainly be some evidence of implied contract. We think the plaintiff was entitled to the excluded answers, because they might have led the jury to infer a contract from what Mrs. Seay said on the subject, when connected with all the surrounding circumstances.

The judgment of this Court is, that the judgment of the Circuit Court be reversed and a new trial ordered.