Pearson, J.
 

 The evidence in support of the allegation of an express promise to pay for the plaintiff’s work, was certainly very slight; and we incline to the opinion, that his Honor would have been justified in telling the jury, there was no evidence to support it. The facts, that the defendant’s testator said the plaintiff was a “ good boy,” had anote for $100 drawn, saying “he wished
 
 to give
 
 it to him,” for his services for that year, and afterwards signed the note and left it among his papers, without delivering it, have a tendency to show a contemplated gratuity in respect to the plaintiff’s services, rather than a special undertaking to pay for them ; consequently, the plaintiff has no right to complain of this part of the charge.
 

 The fact that the mother of the plaintiff performed services iu the family, equivalent to his board, schooling, &c., had
 
 *219
 
 no legitimate bearing, and was properly rejected ; it was calculated to mislead by serving the purpose of a “ make-weight” in getting up an impression that the plaintiff’s was a “ hard case.”
 

 The question then is, under the circumstances of this case, did the law imply a promise to ¡jay the plaintiff for his services ?
 

 When work is done for another, the law implies a promise to pay for it; this is the general rule ; it is based on a presumption, growing out of the ordinary dealings of men. But an exception is made, whenever this presumption is rebutted by the
 
 relation of the parties.
 
 The case of a parent and child is an exception ; also, that of a
 
 step-father
 
 and child;
 
 Hussey
 
 v. Roundtree, Busbee 111,
 
 “
 
 The step-father is not bound to support his step-children, nor they to render him any services ; but if lie maintain them, or the}7 labor for him, they will be deemed to have
 
 dealt with each other in the character of parent and
 
 child, and not as strangers.” The same principle applies to a grand-father and child, when the one assumes to act
 
 in loco parentis.
 

 In our case, this relation existed to all intents and purposes. The circumstance that the plaintiff was illegitimate, has no bearing on the application of the principle; the “ old man,” in the fullness of his affection, forgave the transgression of his daughter, and allowed her and her child “ to live with him as
 
 members of his family
 
 up to his death.” The relation of the parties rebuts the presumption of a special contract, and puts the idea, that he was to be paid for furnishing them a home, or they -wore to have “ a price” for work and labor done, out of the question. In the language of Ruefist, Judge, tc Such claims ought to be frowned on by- courts and juries. To sustain them, tends to change the character of our people, cool domestic regard, and in the place of confidence, sow jealousies in families ;”
 
 Williams
 
 v. Barnes, 3 Dev. 349. In that case, a son,
 
 after
 
 he was
 
 twenty-one years of
 
 age, continued to live with his
 
 mother
 
 and act as overseer for her, and it was held by a majority of the court, that the relation of the parties was a circumstance that ought to have been left
 
 *220
 
 to the jury, as tending to rebut the presumption, that ho was to be paid “ a price” for his work. In this, the plaintiff had been raised and cared for as a son by his grand-lather, and the relation,
 
 se,
 
 rebuts the presumption of a promise to pay for his services, during his minority. There is no error.
 

 Per Curiam, Judgment affirmed.
 

 His Honor, the Chief Justioe, was prevented by sickness from attending the court during the greater part of this term, which accounts for the fact that so few opinions of his appear in this number.