J. N. CALLAHAN v. JOHN WOOD, Administrator of Mrs. E.
M. CORBET, et al.

*Claim Against Decedent's Estate—Services of Relative—*
*" Post-Mortem " Claimant.*

1. Although when work is done for another the law implies a
   promise to pay for it, such presumption may be rebutted by
   the relations of the parties implying mutual interdependence.
2. The law does not regard with favor claims set up, after
   death, against the decedent's estate in the absence of any
   agreement or intention between the parties prior to the
   death.
3. Where a son-in-law, with his family and mother-in-law, lived
   together " as one family " for 14 years at the house of the
   mother-in-law, where plaintiff's five children were born, and
   there was no agreement for payment for services on either
   side, and no payment was made except in mutual services ;
   *Held*, that there was no implied promise on the part of the
   mother-in-law to pay for the services of plaintiff and his wife,
   and recovery cannot be had against decedent's estate.

CIVIL ACTION, heard before *Timberlake, J.*, at Fall Term,
1895, of RUTHERFORD Superior Court, on exceptions to
referee's report.

The action was brought by the plaintiff, (a son-in-law
of the intestate of defendant) against the defendant for the
value of the services of himself and wife to defendant's
intestate, which he placed at $1,000 over and above all
set-offs and counter-claims.

The 5th and 6th paragraphs of the complaint were as
follows :

" V. That the said intestate, Mrs. E. M. Corbet, resided
with plaintiff during the fourteen years next preceding her
death, and during all these years was maintained, sup-
ported and cared for by plaintiff; and during the three
years next preceding her death the said intestate was in

very feeble health, and so frail and weak as to need to be waited upon as a child, not being able to attend to her own personal needs; and that during the last six months preceding her death the said intestate was confined almost all the time to her bed, and required, besides the services of a physician, constant and unremitting and careful watching and attention, for which plaintiff was compelled to quit from his work as a carpenter weeks at a time : and that he was at all times disturbed and bothered in his work by the demands made upon his time and attention, because of his services rendered to said intestate in her last illness.

" VI. That the maintenance and support furnished by him to said intestate during the first eleven years of her residence with him were reasonably worth $50 per annum; that the maintenance, support and extra care and attention for the next two years and a half were reasonably worth $100 per annum; and that the extraordinary care and watchfulness demanded of him during the last six months prior to the death of said intestate was reasonably worth $200."

The defendant answered, denying the right of plaintiff to recover, alleging, among other things: " That about fourteen years before the death of Mrs. E. M. Corbet plaintiff boarded with her and, while living in the house of decedent as a boarder, he courted and married her daughter; that plaintiff was then almost penniless, had no house or home for his family, and decedent allowed him to remain with her in the house, and while there some five children were born to plaintiff; that decedent was then an active and healthy woman, and did everything in her power to assist plaintiff in the raising, maintenance of himself and family, and plaintiff was wholly dependent on decedent for such assistance, he being absolutely unable

118—48

CALLAHAN *v.* WOOD.

otherwise to support himself and family; that plaintiff continued to live with his mother-in-law till her death, with perhaps a few months' exception, but never at any time maintained and supported her, but was by her furnished a house to live in and received for himself and family the aid, maintenance and support which a kind mother would give to her daughter.

" And defendants aver that the furnishing a house and home for about fourteen years, and the constant aid and assistance that decedent bestowed on plaintiff's family, was and is of much greater value in money than anything or everything that plaintiff ever did or was able to do for decedent, and should and does more than balance any claim plaintiff has against her estate, and the same is pleaded as an off-set or counter-claim.

" These defendants further say that plaintiff is and always has been for many years of a weak and debilitated constitution, and of an indolent disposition, indisposed to labor when able and frequently and generally complaining of ill health, and has not been able to give the support to the decedent which he alleges in his complaint; and, further, these defendants have each and all, at all times, whenever it was necessary by reason of her sickness, contributed in money and provisions and personal attention, and have paid physicians' bills, and each one of these defendants has actually contributed more toward the support, care and maintenance of decedent than the plaintiff has, and this without being furnished a house or other assistance which plaintiff has received."

The referee's report was as follows:

*"Findings of fact.*

" 1. I find that the board and care of Mrs. E. M. Corbet during the three years prior to her death were worth

as follows : For thirty-two months of said time, at the rate of $7 per month ; for one month of the remainder of said time during sickness, $10 ; and for the remaining three months of said time, during her last sickness, $18 per month, or a total of $288.

" 2. I find that the extra expense to the plaintiff in the way of extra fuel, board of company, &c., incident to the last sickness of Mrs. Corbet, not included in the foregoing finding, was $30.

" 3. I find that the rental value of Mrs. E. M. Corbet's house and lot was three dollars per month during the three years prior to her death, a total for the whole of said three years of $108.

" 4. I find that the services and assistance rendered plaintiff by Mrs. Corbet was equal in value to any and all expense incurred by plaintiff in the way of improvements or otherwise not included in the foregoing findings of fact.

" 5. I find that there was no express promise on the part of Mrs. Corbet to pay plaintiff for board, care and services.

" I find that Mrs. E. M. Corbet was the mother-in-law of plaintiff, J. N. Callahan, and that plaintiff and his family lived in the house of said Mrs. E. M. Corbet from the time of his marriage to her daughter, some fourteen years prior to said Mrs. Corbet's death, up to the time of her said death ; that during this time there was no payment of rental on part of plaintiff ; that Mrs. Corbet and plaintiff's family lived together as one family during the time, Mrs. Corbet rendering such attention to plaintiff's children in sickness and in the way of nursing and assistance in housework as she could, considering her age, and plaintiff furnishing the larger part, if not all, of the provisions for the support of the family, and giving to Mrs. Corbet kind attention during her sickness ; I find plaintiff married the daughter of Mrs. Corbet at the age of 17 years,

and that all of plaintiff's children, five in number, were born under Mrs. Corbet's roof; that at the time of Mrs. Corbet's death she was advanced in years; that Mrs. Corbet paid taxes on her property, and bought her own clothes, and occasionally made presents of money to her daughter, wife of plaintiff."

*Findings of Law.*

"1. I find that the defendants are not entitled to set off against the plaintiff's claim the rent of Mrs. Corbet's property accruing or services rendered by her to plaintiff for any time prior to three years of her death.

"2. I find that the relationship existing between the plaintiff and Mrs. Corbet, and the circumstances surrounding such relationship in this case, were such as to rebut the ordinary presumption of law implying a promise to pay for board, care and services, and were such, on the contrary, as to raise the presumption that the parties did not contemplate payment for said board, care and services.

"3. I find that the evidence in this case is not sufficient to rebut the latter presumption, and that no implied agreement to pay for such board, care and services is shown, and therefore that plaintiff is entitled to recover nothing."

The plaintiff filed exceptions to the report which were sustained by his Honor, and from the judgment rendered for plaintiff the defendant appealed.

*Messrs. McBrayer & Durham* and *M. H. Justice*, for plaintiff.
*Messrs. Webb & Webb*, for defendants (appellants).

FAIRCLOTH, C. J.: The plaintiff sues for the value of services rendered his mother-in-law prior to her death. The referee finds in substance that the mother-in-law had

CALLAHAN *v.* WOOD.

property sufficient for her support, and that the plaintiff married her daughter at, and he and his wife lived in, the house of her mother for fourteen years before and until the death of the latter.   He also finds that " Mrs. Corbet and plaintiff's family lived together as one family during the time," in the house of the mother-in-law, and that plaintiff's five children were born under her roof, all the parties rendering assistance to each other during that time. There was no agreement to pay either way, and nothing was paid except in such mutual services.

Does the law imply a promise to pay the plaintiff for the services of himself and wife under these circumstances?   We think it does not.   The general rule is that when work is done for another the law implies a promise to pay for it, and it is based on the presumption arising out of the ordinary dealings among men.   But this presumption may be rebutted by the *relations* of the parties.   The cases of father and child, step-father and child, grandfather and child have been held to be exceptions to the rule, in which they were not in the relation of strangers.   Is there any reason more favorable to a son-in-law under the situation in the present case, where the relation of " one family " was established and recognized by the parties until death, without any fact found or evidence tending to show that there was any intention on the one part to pay for the services, or on the other part to charge for the same?   The law does not look favorably upon such after-death charges, in the absence of any intention between the parties prior to death.

We do not put our decision entirely on the kinship relation, but also on the " one family " relation established and maintained by the parties, and the entire absence of any intention to the contrary on the part of either party. We approve of the language of RUFFIN, J., in *Williams* v.

*Barnes*, 3 Dev., 348, saying: " Such claims ought to be frowned on by courts and juries. To sustain them tends to change the character of our people, cool domestic regard, and in the place of confidence sow jealousies in families." *Hudson* v. *Lutz*, 5 Jones, 217; *Young* v. *Hermon*, 97 N. C., 280. Let this be certified.

Reversed.