## LIPE v. HOUCK.

(Filed April 9, 1901.)

1. CONTRACT—*Breach—In Loco Parentis.*

> Evidence in this case held sufficient to establish a contract between a grandfather and grandson to pay for services to be performed by grandson.

2. ACTION—*Contract.*

> The cause of action in this case arose on death of decedent for breach of contract whereby plaintiff was to have a part of property of decedent, notwithstanding he was not to have the property until the death of the widow of decedent.

ACTION by J. A. Lipe against W. A. Houck and J. S. Lipe, Adm'rs of W. A. Lipe, heard by Judge *H. R. Bryan* and a jury, at November Term, 1900, of ROWAN County Superior Court. From a judgment for defendants, the plaintiff appealed.

*R. Lee Wright* and *B. B. Miller,* for the plaintiff.
*Overman & Gregory,* for the defendant.

COOK, J. The question presented for our decision is, "Whether the evidence established a contract, express or implied, between the plaintiff and defendants' intestate?"

The construction, which is a question of law, is not involved. It is the existence of a contract and its terms, which is a question of fact to be found by a jury. As to this, we think his Honor erred in not submitting the issue to the jury.

In ascertaining whether there was a contract, the relations of the parties must be taken into consideration in connection with their transaction and dealing. The plaintiff was recognized by the intestate as his grandson, and so treated.

He received the support and care from his grandfather during his minority, and in return rendered valuable and efficient service. There was no legal obligation resting upon him to remain with and submit to the control of his grandfather, who was not his natural guardian, nor was the grandfather under such obligations to him as are imposed upon the father or natural guardian.

These conditions were recognized by them, as is shown by the conduct of the intestate as testified to by the plaintiff. It was *when* he became *twenty-one* years old, that the intestate called the plaintiff to him and had an understanding with him as to their *future* relations. There was no *continuation* of parental control or filial service *after* the plaintiff arrived at his majority, but promptly an agreement and understanding was had between them.

It appears that the intestate was moved to this understanding by his own necessities and for his own benefit. He realized and appreciated the valuable and efficient services of the plaintiff—"Jim was worth as much as any two hands he had" —recognizing and speaking of him as "a hand;" "if it was not for Jim, he could not get anything done;" "plaintiff was a good hand and treated intestate alright. Intestate esteemed him just as much as his own son."

Under these conditions (intestate growing old) the agreement was made, as appears from testimony of plaintiff: "When I became twenty-one years old W. A. Lipe, who was my grandfather, called me and asked me if I was going to stay with them. I said 'yes, sir.' He then said 'if you will stay and be a good boy, I will give your mother's part of the land and property,' and then he asked me if that was not as good as anybody could do. I said 'yes, sir.' He then said I was to get it after his death and after his wife's death; he said he would give me my patches on which I could raise wheat and cotton."

Taking this, in connection with the testimony of intestate's widow as follows: "Mrs. Catharine Lipe, and the widow of the intestate. I helped to raise plaintiff. My children are dead. Plaintiff has been living with me and his grandfather all his life. We raised him. He worked for his grandfather. Jim had principal management. Lipe told him what to do. He said he would give the use of the land for a gift. I know when plaintiff became twenty-one years old. It was about seven years ago. An agreement was entered into between intestate and plaintiff. Mr. Lipe asked him if he was going to stay with us all his life. Plaintiff said 'yes.' Then Lipe said you can have your mother's part. My sister, Albertine Freeze, was present. Plaintiff was a good hand and treated intestate alright. Intestate esteemed him just as much as his own son. His services were worth $200 per annum," and the fact that plaintiff *did* remain with intestate and work and serve him as before, what conclusion could be reached other than that he was complying with his part of their understanding? He was of age; capable of contracting; the understanding was based upon a valuable consideration (*do ut facias*), and the intestate accepted the service and received the benefits. From the evidence it appears that the intestate intended to perform his part of the agreement or understanding, from declarations made to several parties: "If Jim stays he should have half of everything there, and he wanted a good man to testify to it;" "Jim might get shingles and finish this porch—it would be his anyhow;" "he would like to have Jim in the yard, and if he did as he had been doing he expected to give him a good home and part of his property." But his death came suddenly and unexpectedly—killed accidentally. No provision by will or otherwise appears to have been made for the performance of his promise.

The facts in this case are unlike those in the case of

*Williams v. Barnes,* 14 N. C., 348, cited by counsel for defendants, where *Ruffin,* J., says: "I think such claims, without probable evidence of a contract, ought to be frowned on by courts and juries," and in other similar cases, wherein the child (or grandchild) upon arrival at full age continues to reside with and serve the parent, without any agreement as to the change of relations theretofore existing—notably *Hudson v. Lutz,* 50 N. C., 217; *Callahan v. Wood,* 118 N. C., 752, and cases there cited.

In this case, the grandfather, not being the natural guardian, and only assuming the act *in loco parentis,* recognized the fact that the grandson had become of full age, and that his merit would be appreciated and services wanted by others who would compensate him for the same; otherwise, why should he ask, "if that was not as good as anybody could do?" The compensation thus offered was such share of his estate as his mother would have taken according to the law of descent and distributions in case of his dying intestate and she surviving him. But the mother was dead, and his promise to make this provision was not complied with, and under the peculiar circumstances of this case he could not take her share. Wherefore, he brings this action to recover upon a breach of the contract, having no other remedy.

It would be unjust for the estate to retain the products of his labor and services for seven years unless they were rendered gratuitiously, which does not appear to have been the fact.

Nor is there force in the contention that the action could not be maintained until after the widow's death. This is not an action for specific performance, but upon a breach of contract—the action for which accrued upon the death of the intestate. For, thereafter, a compliance with their understanding was impossible.

His Honor erred in holding that the plaintiff could not recover upon the evidence presented, and there will have to be a new trial.