## May Bell Smith v. Lyman Birdsall, Adm'r.

1. PRACTICE—*Questions Where a Motion is Made at the Conclusion of the Proof Offered by Both Parties to Instruct Jury to Find for the Defendant.*—Where, at the conclusion of the proof offered by both parties, a motion is made to instruct the jury to find the issues for the defendant, the question is whether all the evidence, both for the plaintiff and the defendant, with all the inferences the jury might draw therefrom, would be sufficient to support a verdict for the plaintiff if one should be returned.

2. PARENT AND CHILD—*Recovery of Wages Where One Lives with Another as a Member of His Family.*—Where the circumstances under which a person went to live with another show that she lived there as a member of his family, she can only recover by showing an express contract for wages, or proving such circumstances as reasonably imply such a contract.

3. SAME—*Express Contract Necessary in Order to Recover for Support and Care.*—A person standing *in loco parentis* can not recover for the support and care of a child nor can the child recover for services rendered to the parent, unless there was an express contract between them for such compensation, or unless the contract for such compensation be established by proof of such facts and circumstances as show that both parties at the time the services were rendered contemplated or intended pecuniary recompense other than that which arises entirely out of the family relation.

4. SAME—*Mere Declaration of Gratitude is Not Proof of an Agreement to Pay.*—Mere declarations of gratitude are not proof of an agreement to pay for services of this character. Loose expressions of an infirm parent, expressions of gratitude for the personal services of a child and of a desire that compensation should be rendered after his death, but not indicative of the terms of a contract, are an insufficient basis for the submission to the jury from which to find whether such a contract in fact existed.

Claim in Probate.—Appeal from the Circuit Court of Ogle County; the Hon. JAMES S. BAUME, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed January 27, 1903.

FRANC BACON, attorney for appellant.

W. P. FEARER and J. C. SEYSTER, attorneys for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

The appellant's father died when she was less than one

year old, and thereupon her mother, who was the daughter of Joseph Stevens, deceased, with the appellant, took up their residence in the home of said Stevens, where they lived until the second marriage of appellant's mother, and then for a little while the appellant resided away from the home of her grandparents, but, as her stepfather had children of his own, she soon returned to the home of her grandparents, where she resided until her grandfather's death, which occurred in 1900.

She was six or seven years of age at the time of her mother's second marriage, which occurred between 1865 and 1870, so that the greater part of her lifetime until she was seven years of age, and during all of her lifetime since then, she resided with her grandfather, and was treated and regarded in every way as a member of the family.

She was sickly until twelve or fourteen years of age and was cared for by her grandfather and his son and daughters. She was educated by her grandfather. She was treated and cared for by him in every way as though she were his own child, and her conduct and treatment of him was reciprocal of that relation. After she took up her residence there the son and daughters of her grandfather married and left the parental roof and she took the place of a daughter and discharged the duties with fidelity and affection.

Joseph Stevens died intestate on the sixth day of April, 1900, and in the same month letters of administration were issued in his estate. After the death of Stevens the appellant married.

On the 25th day of January, 1902, the appellant filed a claim against his estate for the sum of $6,000 for services rendered from the 25th day of January, 1898, to the time of the death of the intestate. After that time the claim was dismissed and this suit was brought at the April term, 1902, of the Circuit Court of Ogle County for the same demand. A short time prior to the death of Stevens he executed a deed conveying to the appellant the property on which he resided at the time of his death, and a few days after his

death appellant filed this deed of conveyance for record. After his death appellant also had in her possession a deed of conveyance from her grandfather conveying to her another lot or tract of land upon which were located two dwelling houses, which deed she claimed had been delivered to her by her grandfather shortly before his death; and thereupon the heirs of Joseph Stevens quit-claimed their interest in this tract or lot of land to her. The real estate conveyed to the appellant was of the value of between $3,500 and $4,000. The value of the property owned by Joseph Stevens at the time of his death, excluding the real estate last named, was at least $50,000. The appellant takes one-fourth of the estate by inheritance.

At the conclusion of the proof offered by both parties, on motion of the defendant, the court instructed the jury to find the issues for the defendant. A verdict was returned accordingly. A motion for new trial being overruled, the court entered judgment against the plaintiff for costs. The plaintiff appeals.

It is argued by appellant that, in passing on the motion to direct a verdict for the defendant, the court should have considered only the evidence offered by the plaintiff, and that the plaintiff's evidence when taken alone did not show that the family relation existed, and that therefore the motion should have been denied. This is a misapprehension both of the law and the deductions to be drawn from the evidence offered by the plaintiff. The plaintiff's evidence showed that she was decedent's granddaughter, that she resided in his home as a member of his family from infancy to womanhood, as well as other facts tending to establish the family relation. But the rule of law is, that when a motion of this kind is made at the close of all the evidence, the question is, whether all the evidence, both for the plaintiff and the defendant, with all the inferences the jury might justifiably draw therefrom, would be sufficient to support a verdict for the plaintiff if one should be returned. Foster v. Wadsworth-Howland Company, 168 Ill. 514; Offutt v. Columbian Exposition, 175 Ill. 472.

But the vital question is, did the family relation exist between decedent and appellant? That it existed admits of no controversy. That any other relation existed was never contemplated by either. No thought was ever more foreign to the mind of appellant or her life-long benefactor, her departed grandfather, than that the relation between them was that of employer and employe, or master and servant. There is no evidence of any dealing between appellant and decedent as master and servant, as employer and employe. Nor is there evidence of any settlement ever made between them or money paid to her. No book of account was kept by either of them in which he was charged for work or credited with payments. There is no evidence that tends in any degree to show that she performed services expecting payment therefor. After the death of decedent she said she had a claim for $100 that was due her from the estate. She presented it to the administrator and it was allowed, and though she talked with him frequently she never said anything to him about a claim for wages.

In Collar v. Patterson, 137 Ill. 403, which was a claim similar to that presented in this case the court says:

"We need then address ourselves only to the question, does the testimony appearing in this record on behalf of claimant establish, or tend to establish, her claim. It shows that in the year 1846, her father having previously died and her mother married a second time, she became an inmate of the family of the deceased, and continued to live with him until 1862, when she married. The wife of the deceased was her aunt. During all these years she performed household duties for the deceased, which the evidence shows were of the value of from $2.50 to $2.75 a week. The circumstances under which she went to live with the deceased, her relationship to his wife, and the fact that she continued to live in his family for so many years without any payment or settlement therefor, raises such a presumption that she lived there as a member of his family, that she can only recover by showing an express contract for wages, or proving such circumstances as reasonably imply such a contract. (Miller v. Miller, 16 Ill. 296; Byers v. Thompson, 66 Id. 421; Faloon v. McIntyre et al., 118 Id. 292.)"

A person standing *in loco parentis* can not recover for the support and care of the child nor can the child recover for services rendered to the parent, unless there was an express contract between them for such compensation, or unless the contract for such compensation be established by proof of such facts and circumstances as show that both parties at the time the services were rendered contemplated or intended pecuniary recompense other than that which arises entirely out of the family relation. This means more than the mere promise to pay which the law implies where one person does work for another with the knowledge and approbation of the other. Such implied promise is refuted by the relationship between the parties. To establish a contract by facts and circumstances the evidence must show that when the services were rendered both parties expected them to be paid for—the one expecting to receive payment and the other to make payment at the time the services were rendered. Miller v. Miller, 16 Ill. 296; Switzer v. Kee, 146 Ill. 577; Heffron v. Brown, 155 Ill. 332.

Mere declarations of gratitude are not proof of an agreement to pay for services of this character. Loose expressions of an infirm parent, expressions of gratitude for the personal services of a child, and of a desire that compensation should be rendered after his death, but not indicative of the terms of a contract, are an insufficient basis for submission to the jury from which to find whether such a contract in fact existed. Ulrich v. Arnold, 120 Pa. St. 170; Collar v. Patterson, 127 Ill. 403.

This record contains some expressions of that character made by the decedent. But if we were to assume that they were equivalent to an expressed intention on the part of the decedent to pay for the services in question, they would be unavailing under the rule in this state, for the reason that the record is entirely barren of any proof whatever tending to show that the appellant, when she rendered the services in question, expected to receive compensation for them. On the contrary, there was proof that the day before the trial of this case in the Circuit Court, appellant

said she thought she was not doing right in prosecuting her claim, but one of the other heirs had beaten the estate out of $7,000, and she was going to see what she could do.  She was a competent witness to contradict the statement, but she did not do so.

Objection was made by appellant to the introduction of deeds of certain property conveyed by decedent in his lifetime to appellant, as well as to the admission of the testimony of a certain physician, called as a witness by appellee, who testified that in the lifetime of decedent, he treated the appellant professionally and charged the services to decedent or to his estate.  We see no error in the admission of this testimony, but in view of the fact that we approve of the action of the trial court in directing a verdict for appellee, the question becomes unimportant.  The test is, does the competent evidence justify a verdict for the appellant?  We hold that it does not.

The judgment of the Circuit Court is affirmed.