WINKLER v. KILLIAN.

(Filed May 25, 1906).

*Executors and Administrators — Services Rendered Deceased—Parent and Child—Presumption of Promise—Compensation—Use of Property.*

1. Where an adult child, who had removed from the home of the parent and had married, rendered services to the parent which were voluntarily accepted, the law implies a promise on the part of the parent to pay what the services are reasonably worth.

2. In the absence of fraud or gross neglect, the plaintiff's claim for personal services rendered defendant's intestate should be reduced by the amount actually received by him in the use and management of the intestate's property, and not by what he could have received by more diligent management.

Action by Pink Winkler against S. E. Killian, Administrator of Susan Winkler, heard by *Judge M. H. Justice* and a jury, at the March Term, 1905, of the Superior Court of Burke.

There was allegation and also evidence on the part of plaintiff tending to show that Susan Winkler, late a resident of the County of Burke, died intestate in said county about the 26th day of March, 1903, and that on the 6th day of August, 1903, defendant was duly qualified as her administrator.

2. That the defendant's intestate was the widow of Abram Winkler, who died in the County of Burke about twelve or thirteen years ago, leaving at his death said widow, then living at the home place, and three sons and four daughters living at the time, all of whom had married and moved away many years before the death of either parent.

3. That after the death of said Abram Winkler, it became necessary for the defendant's intestate to have a constant attendant both day and night, as she was an exceedingly large and fleshy woman of advanced age, afflicted with dropsy and other diseases, and it was necessary for some one to provide her sufficient supply of food each day, and to see that it was suitably prepared.

4. That from about the 20th of June, 1892, to the 26th day of March, 1903, the plaintiff had the sole responsibility and entire expense of taking care of her and giving her food, fuel, etc., and provided her all proper attention and service by his own labor, that of his wife, his three minor sons and help employed by him, both day and night, and with properly prepared food furnished three times and upward from his own house; that this labor and the amount of food so consumed was at all times much greater than would be required for an ordinary person, but especially during the last five or six years of the life of the defendant's intestate, while she was childish and greatly afflicted with

WINKLER v. KILLIAN.

dropsy, she was a constant care to the plaintiff, requiring persons to attend to and work with her almost constantly day and night, and he was compelled to keep large fires going constantly, both day and night, both winter and summer, consuming an immense quantity of wood, said service, care and attention, and amounts paid physicians, burial expenses, etc., being of the value of four thousand five hundred and fifteen dollars and fifteen cents.

5. That in order to be better able to render the services herinbefore mentioned, the plaintiff moved from the place he was living at the time of his father's death to a point nearer his mother, but did not at any time reside in the house with her nor she with him; that he at one time started a new house for her, with her approval, close to his own for greater convenience, and got up the frame, but she changed her mind, not wishing to leave the old home, and he tore down the frame and erected another house nearer to her for the occupancy of Mrs. Wood and her children, who for about six years was the constant attendant of the defendant intestate under employment by the plaintiff.

6. That during all the years aforesaid none of the other sons or daughters of the defendant's intestate ever contributed anything to her support, nor did any of them ever come to see her except one daughter on a few occasions.

Plaintiff in his own behalf testified as follows: "I am plaintiff in this action. Have been married about thirty years. I built a house on my father's land and moved to myself three or four months after I was married. I have lived by myself ever since. I afterwards bought the land on which I built. I moved to the place I now live a few months after my father's death."

Plaintiff then proposed to prove by his own testimony that "soon after the death of his father, in 1891, the children met together, and that the plaintiff told the others that if they or any of them would take the old lady and take care of her

141——37

he would give them all his interest in her estate; but that if he took care of her he should expect to be well paid. That the others declined to take care of her." At the close of the evidence the court said to counsel that he would charge the jury that upon the testimony, if believed, the plaintiff could not recover at all and in deference to this intimation of the court, plaintiff excepted, submitted to a nonsuit and appealed.

*E. B. Cline* and *S. J. Ervin* for the plaintiff.
*Avery & Avery* and *M. H. Yount* for the defendant.

HOKE, J., after stating the case: It is ordinarily true that where services are rendered by one person for another, which are knowingly and voluntarily accepted, without more, the law presumes that such services are given and received in expectation of being paid for, and will imply a promise to pay what they are reasonably worth. This is a rebuttable presumption, for there is no reason why a man cannot give another a day's work as well as any other gift, if the work is done and accepted without expectation of pay. It is equally well established that when a child resides with a parent as a member of the family or with one who stands to the child *in loco parentis,* services rendered under such circumstances by the child for the parent are, without more, presumed to be gratuitous and no promise will be implied and no recovery can be had without proof of an express and valid promise to pay, or facts from which a valid promise to pay can be reasonably inferred. This last position is usually considered as an exception to the general rule, and in this and most other jurisdictions obtains both as to adult and minor children. Wherever the same has been applied, however, to claims by adult children so far as we can discover, it has been made to depend not alone on the fact of kinship in blood, but also on the fact that the adult child

has continued to reside with the parent as a member of the family. This additional fact of membership in the same family has been present in all the cases on this subject that we have noted in this State, from the case of *Williams v. Barnes,* 14 N. C., 348, down to that of *Stallings v. Ellis,* 136 N. C., 69, and frequently finds expression in these decisions as the controlling fact on which they rest.

Thus in *Williams v. Barnes, supra, Ruffin, J.,* delivering the opinion of the court, said: "It cannot be possible that the head of a harmonious household must drive each member off as he shall arrive at age or be bound to pay him wages or for occasional services unless he shows that it was agreed that he should not pay." In *Dodson v. McAdams,* 96 N. C., 149-154, *Merrimon, J.,* for the court, said: "It seems to be settled law, certainly in this State, that if a grandfather receives a grandchild or grandchildren into his family, and treats them as members thereof—as his own children—he and they are *in loco parentis et liberorum,* and hence, if the grandchild in such case shall do labor for his grandfather, as a son or daughter does ordinarily as a member of the family of his or her father, in that case, in the absence of any agreement to the contrary, no presumption of a promise on the part of the grandfather to pay the grandchild for his labor arises; the presumption is to the contrary The grandchild, as to his labor or services rendered in such case, is on the same footing as a son or daughter. And this is so after the grandchild attains his majority, if the same family relation continues. This rule is founded in large measure upon the supposition that the father clothes, feeds, educates and supports the child, and that the latter labors and does appropriate service for the father and his family in return for such fatherly care and domestic comfort and advantage. The family relation and the nature of the service rebut the ordinary presumption that arises when labor is done for a party at his request, express or implied, of a promise on his part to pay for it."

WINKLER *v.* KILLIAN.

In *Young v. Herman,* 97 N. C., 280, it is held: 1. "When a child after arrival at full age continues to reside with and serve the parent, the presumption is that the service is gratuitous. 2. But this presumption may be rebutted by proof of facts and circumstances which show that such was not the intention of the parties, and raise a promise by the parent to pay as much as the labor of the child is reasonably worth." Again, in *Callahan v. Wood,* 118 N. C., 752, *Faircloth, C. J.,* for the court, said: "We do not put our decision entirely on the kinship relation, but also on the one family relation established and maintained by the parties." In *Hicks v. Barnes,* 132 N. C., 146, the fact that the parties lived as members of the same family was brought out and dwelt upon as the controlling feature of the case. The one family relationship is so clearly made the *ratio decidendi* in claims of this character that the principle extends to many other cases of kinship besides that of parent and child, including persons who are no blood kin, but stand in this relation to each other, and applies also where the parent resides with his child as a member of the child's family and household. This was held in *Stallings v. Ellis,* 136 N. C., 69, and the facts stated and the entire opinion show that the decision was made to depend on the relationship between the parties as members of one and the same household and family.

Counsel have not cited, nor have we been able to find, any case in this State where an adult child making a claim for services had removed from the home and family of the parent, had married and assumed the care and responsibility of a family of his own for and during the time the services were rendered. Courts of the highest authority in other jurisdictions, however, have dealt with the matter and have held that in such cases the general rule obtains that where such services are rendered and voluntarily accepted, a promise to pay therefor will be implied. Thus in *Parker v.*

*Parker,* 33 Ala., 459, it is held that "whatever may be the claims of filial duty and affection as between an aged and infirm father and his grown son, there is no principle of law which requires the son, living separate and apart from the father, to perform services for the latter without compensation, where the father is in comfortable circumstances; consequently, to support the son's claim for compensation for such services, proof of an express contract is not necessary." And in *Steel v. Steel* 12 Pa., 64, 66, *Rodgers, J.,* for the court, said: "Had this been a claim for services rendered without request by a son while residing in the same house with the father and as a member of his family, this action could not be maintained. But, if we believe the evidence, the services were performed at the request of the father by a son who lived at a distance from him on a different property, and with a family of his own to support." See also *Bell v. Moon,* 79 Va., 341; *Smith v. Birdsall,* 106 Ill. App., 264; *Markey v. Brewster,* 10 Hun., 16; same case approved 70 N. Y., 607. There are other decisions of like import and they fully sustain the doctrine as stated generally in 21 Am. & Eng. Enc. (2 Ed.), 1061: "The general rule deduced from the authorities is that where a child, after arriving at majority, continues to reside as a member of the family with the parent or with one who stands in the relation of a parent, or where a parent resides in the family of a child, the presumption is that no payment is expected for services rendered or support furnished by one to the other. This presumption is not conclusive, but may be overcome by proof." And further on page 1063 : "Where a child lives separate and apart from a parent, has left the father, married and set up life for himself, the presumption that the service or support is gratuitous does not obtain." The text writers are to same effect. Abbott's Trial Evidence (2 Ed.), 443; Page on Contracts, sections 778-782 inclusive. On the evidence admitted by the court the plaintiff was entitled to the charge that if the

same was believed the law would imply a promise on the part of the intestate to pay what the services were reasonably worth, the amount to be determined by a jury or referee, as the court in its legal discretion may determine. In taking the account or determining the amount by a jury, the plaintiff's claim for personal service should be reduced by the amount received by him in the use and management of the intestate's property. In the absence of fraud or gross neglect the plaintiff would be only chargeable for what he actually received from this source, and not what he could have received by more diligent and careful management. There is error and a new trial is awarded.

New Trial.