**Beulah Keyes, Executrix, Appellee, v. The Estate of Lucy Thornton, Deceased, Appellant.**

**Gen. No. 5,171.**

1. APPEALS AND ERRORS—*when no questions of law preserved for review.* If no propositions of law are submitted to the trial judge to be passed upon and there are no rulings in excluding or admitting evidence to which exceptions were taken, no questions of law are preserved for review in a case tried by a judge without a jury.

2. CONTRACTS—*what essential to authorize presumption that board was given and services rendered without expectation of compensation.* Where near relations, by blood or marriage, reside together as one common family, and one of them renders services to another, and such other furnishes him board and lodging or other necessaries or comforts, a presumption arises that neither party intended to receive or pay compensation for the services, on the one hand, or for the board and lodging or other necessaries or comforts, on the other; but such presumption may be overthrown and the reverse established by proof of an express or implied contract, and the implied contract may be proved by facts and circumstances which show that both parties at the time the services were performed, contemplated and intended pecuniary compensation.

Contested claim in court of probate. Appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the April term, 1909. Affirmed. Opinion filed October 19, 1909.

S. J. DREW, for appellant.

KNOX & AKIN, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

Appellee, executrix of the last will and testament of John Keyes, deceased, filed a claim against the estate of Lucy Thornton, deceased, in the Probate Court of Will county, for care and maintenance of the decedent during the last six years of her life. The claim was disallowed, and an appeal was taken to the Circuit Court of said county, where a trial was had before the court without a jury, and a judgment for $1,275.54 was rendered in favor of appellee, to which the administrator of the estate of Lucy Thornton excepted and prosecutes this further appeal.

Appellant contends that the judgment is contrary to law; that it is not supported by the evidence; that "the evidence does not show an express contract, or such facts from which an express contract exists, where the family relationship exists;" and that the court erred in not sustaining appellant's motion to exclude all .of the evidence pertaining to the amount of compensation as claimed by appellee.

At the close of appellee's evidence, appellant moved the court to exclude all evidence of declarations made by John Keyes, and all evidence pertaining to the amount of compensation for services, but offered no proof except the files in the estate of Lucy Thornton. The court sustained appellant's objections to testimony showing statements made by John Keyes out of the presence of Lucy Thornton, but did not rule on appellant's motion to exclude evidence pertaining to the amount of compensation for services. Appellant did not ask for a ruling on that motion and preserved no exceptions to the ruling of the court upon the first motion, nor upon the failure of the court to pass upon the motion to exclude the evidence as to compensation.

No propositions of law were submitted to the trial court to be passed upon, and there were no rulings in excluding or admitting evidence over appellant's objection to which exceptions were taken. Therefore, there is no question of law before us. Dwelling House

Ins. Co. v. Butterly, 133 Ill. 534; Grand Pacific Hotel Co. v. Pinkerton, 217 Ill. 61; Downing v. Kirkpatrick, 125 Ill. App. 542.

The evidence shows that Lucy Thornton, deceased, was the mother of Beulah Keyes, and for several years prior to her death resided with John Keyes, deceased, and his wife, Beulah Keyes; that when she went to live with John Keyes, she had adequate means for her support, and had resided in her own house up to that time; that she was then about ninety years old, and quite infirm; that her hearing was affected and she was rapidly losing her eyesight, and had been confined to her bed by sickness; that for a considerable time she had had no one to take care of her, and had great difficulty in getting any one to stay with her; that about two years before, she had fallen and broken her wrist; and that she went to live with John Keyes to be fed and cared for as an invalid; that she lived there six years, and died there. During that time, she rendered no services of any kind to John Keyes, or to the members of his family; and through all the time she was there, she was a great care and caused considerable expense.

"Where near relations, by blood or marriage, reside together as one common family, and one of them renders services to another, and such other furnishes him board and lodging or other necessaries or comforts, a presumption arises that neither party intended to receive or pay compensation for the services, on the one hand, or for the board and lodging or other necessaries or comforts, on the other; that they were intended as mutual acts of kindness, done or furnished gratuitously." *In re* Schmidt's Estate, 93 Wis. 120.

This presumption may be overthrown and the reverse established by proof of an express or implied contract; and the implied contract may be proven by facts and circumstances which show that both parties, at the time services were performed, contemplated or intended pecuniary compensation. Miller v. Miller, 16 Ill. 295; Freeman v. Freeman, 65 Ill. 106; Switzer

v. Kee, 146 Ill. 577; Heffron v. Brown, 155 Ill. 322; Martin v. Martin, 89 Ill. App. 147; Smith v. Birdsall, 106 Ill. App. 264.

The evidence shows that the subject of compensation had been discussed between John Keyes and Lucy Thornton, and that it was fully understood that she was to pay for her board and care. The amount had been discussed but not fixed upon. Keyes, at one time, requested a settlement of the account, and she expressed a desire to keep her property in her own name as long as she could, and possibly until her death. Keyes was willing to accommodate her if he could safely, and she and Keyes took counsel in the matter, and were advised that if it was understood she was to pay for her board, the amount could be determined afterwards. That she intended to pay Keyes for services, but did not want to do so while living is further established by a witness to whom she said, "I have plenty of means, and if I live prudently as I have always done there will be sufficiently left to pay them for my care." To another person, she said, "John is good to me, but he will be well paid for all he is doing for me," to which Keyes replied, "I expect to be paid for my care," to which she said, "I want them well paid for all they have done for me." She said to another, "I know I am a great affliction to John Keyes, and they have been so good to me, and I hope there will be enough left to pay them well for their trouble."

"One who becomes a member of the family cannot be charged for his support. But in order to become a member of the family he must assume and discharge duties usually incumbent upon the individuals of the family." Wence v. Wykoff, 3 N. W. Rep. 685.

In the absence of proof, the near relationship existing between the wife of John Keyes and Lucy Thornton will not authorize the conclusion that she became a member of the family. She entered his house as an invalid for board, care and nursing, and not as a member of the family. She assumed no duties and ren-

dered no service to him or members of his family. He expected compensation for his services, and she, at the time they were rendered, intended to compensate him therefor, and the law will surely raise an implied contract whereby she became bound so to do.

Appellant's chief argument is that the income from the estate of Cary Thornton, the deceased husband of Lucy Thornton, was chargeable with her support, and that John Keyes, as a joint executor and trustee of said estate and as agent for Lucy Thornton, was charged with applying this money to pay her personal debts and that, for this reason, the claim is not maintainable against the estate of Lucy Thornton. We fail to see the force of such argument and cannot agree with counsel for appellant in his contention.

The suggestion in appellant's argument that the amount of the judgment is excessive has no force, as appellant offered no proof tending to question the reasonableness of the amount, and there was evidence showing that the services were worth from $15 to $25 per week. The judgment is equal to less than $8 per week for five years.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

Mr. Presiding Justice DIBELL took no part.