E. L. McSWAIN v. THOMAS G. LANE, JR., ADMINISTRATOR OF THE ESTATE OF GEORGE Z. HOWARD

AND

SUE McSWAIN v. THOMAS G. LANE, JR., ADMINISTRATOR OF THE ESTATE OF GEORGE Z. HOWARD

No. 6826SC352

(Filed 13 November 1968)

**1. Trial § 21—  motion to nonsuit — consideration of evidence**

On motion to nonsuit, the evidence must be taken as true and considered in the light most favorable to plaintiff, giving him the benefit of every reasonable inference which may be drawn therefrom.

**2. Trial § 21— weight and credibility of evidence**

The weight and credibility of the evidence are for the jury.

**3. Executors and Administrators § 24; Quasi-Contracts § 2— action for personal services rendered decedent**

In an action to recover for personal services rendered to decedent, plaintiffs' evidence tended to show that decedent offered to leave all his property to plaintiffs and their children if plaintiffs would move into his house and take care of him, that plaintiffs told decedent they would not move into his house but would do everything possible to take care of him, whereupon decedent stated he would make a will leaving all his property and insurance to plaintiffs and their children, and that plaintiffs thereafter performed various services for decedent during their visits to his home. *Held:* While the evidence is insufficient to sustain an express contract, decedent's offer having been rejected by plaintiffs' failure to move into his house, the issue of *quantum meruit* should have been submitted to the jury, since the evidence was sufficient to permit the jury to find that the services were rendered and accepted under the mutual understanding that they would be paid for.

**4. Executors and Administrators § 24; Quasi-Contracts § 2— action for personal services rendered decedent**

Allegations that the personal services rendered decedent were under an express contract to reimburse plaintiff therefor does not preclude recovery on *quantum meruit*.

**5. Executors and Administrators § 24; Quasi-Contracts § 1— implied promise to pay for services**

Where one performs services for another which are knowingly and voluntarily accepted, nothing else appearing, the law implies a promise on the part of the recipient to pay the reasonable value of the services.

APPEAL by plaintiffs from *Bowman, S.J.*, 29 April 1968, Schedule D Session, MECKLENBURG Superior Court.

In the E. L. McSwain case, the plaintiff alleged a contract with George Z. Howard (the intestate), pursuant to which the plaintiff was to render certain personal services in consideration of the intestate's leaving all of his property to plaintiff's children. The plaintiff also stated a second cause of action for payments made on a bank loan in behalf of the intestate. The defendant filed a cross-action in connection with this second cause of action.

The second cause of action in the E. L. McSwain case and the cross-action were not disposed of in the superior court, and they remain on the docket in that court.

In the Sue McSwain case, a cause of action similar to the first cause of action in the E. L. McSwain case is set out.

The two cases were consolidated for purposes of trial, and at the

close of the plaintiffs' evidence, judgments of involuntary nonsuit were entered as to the first cause of action in the E. L. McSwain case and the cause of action in the Sue McSwain case. From these judgments, an appeal was taken to the Court of Appeals.

*Sanders, Walker & London by Alvin A. London and James M. Shannonhouse, Jr., Attorneys for plaintiff appellants.*

*Clayton, Lane & Helms by O. W. Clayton; Childers & Fowler by Max L. Childers, Attorneys for defendant appellee.*

CAMPBELL, J.

[1]   The plaintiffs assign as error the granting by the trial court of the motions for judgment as of involuntary nonsuit entered at the close of the evidence on behalf of plaintiffs.

> "It is axiomatic that on motion to nonsuit the evidence must be taken as true and considered in its light most favorable to the plaintiff. Plaintiff is entitled to the benefit of every reasonable inference which may be drawn therefrom. Contradictions and inconsistencies in plaintiff's evidence are for the jury where the evidence, taken in its most favorable light to the plaintiff, makes out a *prima facie* case. All conflicts in plaintiff's evidence must be resolved in his favor." (Citations omitted) *Homes, Inc. v. Bryson*, 273 N.C. 84, 159 S.E. 2d 329.

[2]   The weight and credibility of the evidence are within the province of the jury. *Sneed v. Lions Club*, 273 N.C. 98, 159 S.E. 2d 770.

Prior to 1950 the intestate owned a home at 115 Gum Street in Charlotte, which was occupied by the intestate, John Lester Howard, Sally Howard, and Sue McSwain. John Lester Howard was referred to as "Uncle Jux", while Sally Howard was known as "Aunt Sally." The relationship between these parties is not shown, but the occupants lived and conducted themselves as a family group. Sue McSwain, an orphan, had lived there since the death of her parents, and from the time she was a small child, this was the only home she knew. On 11 November 1950 she was married to E. L. McSwain, a sergeant and career soldier in the United States Army since 29 July 1948. After their marriage, they lived at various places, depending on E. L. McSwain's duty station, but until 1962 the Gum Street residence was used as their permanent mailing address. She returned there for visits and for vacations of varying duration. She brought her children there when her husband was on overseas duty. When she was there, they all continued as a family group.

E. L. McSwain testified as to a conversation between the intestate and the plaintiffs, which took place in February 1958 immediately after the death of "Aunt Sally":

"George asked my wife, because since Aunt Sally died he had nobody else to care for him, if we would move into the house with him, that this property and home and everything he might have would go to my wife and children. That, in essence, is what he said. My wife told him we could not move there, but she would do everything in her power to take care of him. George then told Sue he would make the will giving her everything he owned plus his insurance to her and the children."

Although the plaintiffs did not move into the house with him, they performed various services for him during their visits, and these services included running errands, cooking, doing the laundry, cutting the grass, repairing the house and various other chores.

[3, 4]    The evidence in this case does not sustain an express contract between the intestate and either plaintiff. The offer made by the intestate in 1958 after the death of "Aunt Sally" was flatly rejected. Sue McSwain and her family did not move into his house and take on a full-time duty of caring for the intestate. However, we think there is sufficient evidence to go to the jury on the issue of *quantum meruit*. The failure to establish an express contract does not prevent the prosecution of a claim for services rendered during the three years preceding the death of the intestate, and whether such services were rendered with the expectation of being paid or under an implied promise of compensation, is a question of fact for the jury.

[4, 5]    Until 1962 the services rendered by the plaintiffs were those ordinarily rendered by a member of a family group and would be controlled by the doctrines enunciated in *Callahan v. Wood*, 118 N.C. 752, 24 S.E. 542; *Lindley v. Frazier*, 231 N.C. 44, 55 S.E. 2d 815, and *Brown v. Hatcher*, 268 N.C. 57, 149 S.E. 2d 586. However, when the plaintiffs moved to Charlotte and established their own home, this relationship changed after 1962. They continued to perform services for the intestate but the family group no longer existed. Clearly, the plaintiffs were entitled to have the jury pass upon their claim for services rendered during the three years immediately preceding the death of the intestate in 1966. The evidence in this case was sufficient to permit, but not require, a jury to find that the services rendered by each of the plaintiffs were not rendered gratuitously, but were rendered in the expectation of compensation. The evidence would also permit, but not require, a finding by the jury

that these services were knowingly and voluntarily accepted by one who fully intended to reward such conduct. This would bring the plaintiffs "within the general rule that if one performs services for another which are knowingly and voluntarily accepted, nothing else appearing, the law implies a promise on the part of the recipient to pay the reasonable value of the services." *Johnson v. Sanders*, 260 N.C. 291, 132 S.E. 2d 582. *Gibbs v. Jones*, 261 N.C. 610, 135 S.E. 2d 673.

The evidence in this case should have been submitted to the jury on the issue of *quantum meruit* for the three years prior to the death of the intestate.

The judgment of involuntary nonsuit in each case is

Reversed.

MALLARD, C.J., and MORRIS, J., concur.